JOHN E. LEE v. ELIZABETH CELESTE THOMPSON, Unmarried.

168 So. 848.
Division B.
Opinion Filed June 8, 1936.

*Daniel & Thompson,* for Appellant;

*Doggett, McCollum, Howell & Doggett,* for Appellee.

TERRELL, J.—On June 1, 1928, appellee, Elizabeth Celeste Thompson, unmarried and at that time eighteen years of age, executed a note and mortgage to Union Mortgage Guaranty Company, payable June 1, 1933, and bearing interest at the rate of seven per cent. per annum. On January 18, 1934, by mesne assignments said note and mortgage came into possession of appellant, who on February 19, 1934, filed his bill to foreclose. The defendant filed her

answer in which she admitted the execution of the note and mortgage and default in payment, but interposed the defense that she was at the time a minor, under the age of twenty-one years, and that she had not ratified the mortgage since attaining her majority. As affirmative relief she prayed that the note and mortgage be decreed to be void and unenforceable and be cancelled.

On the issue so made a master was appointed to take testimony and made findings of law and fact. The master found that after reaching her majority defendant by her conduct ratified the mortgage, but that such ratification took place while she was without knowledge that she was not legally liable, hence as a matter of law her ratification was ineffective. The complainant and defendant both filed exceptions to the master's report. On final hearing the chancellor found the equities to be with the defendant, dismissed the bill, and decreed the note and mortgage to be devoid of binding force and effect and ordered them cancelled. This appeal is from the final decree.

The sole question with which we are concerned is whether or not appellee ratified the mortgage after she attained her majority. Other questions argued are comprehended in this one.

The record discloses that Miss Thompson was born April 27, 1910, and executed the mortgage June 1, 1928, being little more than a month past her eighteenth birthday. She had on April 21, 1928, signed an application for the loan which the mortgage was given to secure. On the day the mortgage was executed her father went to the school she was attending and requested her to go with him to town to sign some papers. She went with him to the office of the Union Mortgage Guarantee Company where she signed the mortgage and notes at his request, neither of which was ex-

plained to her. The check to cover the loan was handed to her father and she endorsed it the next day at his request, not knowing its import.

Miss Thompson has never been married nor had her disabilities of non-age removed. She lives on the property mortgaged with her mother and four brothers, which was bought and given her by her father several years before. Her father and mother are separated and the former has not been at home but once since the execution of the mortgage and that was for about a week in December, 1930. She has not seen him since and does not know where he is. He was at home about a week when the mortgage was executed. None of the proceeds of the loan was used on the property in improvements or in paying for it and none of it was given to Miss Thompson.

From the time the loan was made, to some time early in 1933 her father sent appellee money to run the house and pay the interest on the notes and taxes on the mortgaged land. She paid these charges promptly with the funds sent by her father until June 1, 1933, but failed to pay the interest due on the latter date because he (her father) did not send her the money. From April, 1933, to February, 1934, correspondence, conferences, and telephone conversations were carried on between Miss Thompson and representatives of the mortgagee with a view to renewing or refinancing the mortgage, but no agreement was reached.

It was during this period of negotiation, some time in May or June, that Miss Thompson overheard a conversation in her place of employment that led her to believe that having executed the mortgage in infancy she was not bound by it. She consulted counsel at once who at her request wrote the mortgagees that Miss Thompson was a minor when she executed the mortgage, that she had not ratified

it since becoming of age, that she could not meet the requirements for renewal demanded of them, and that she did not consider herself in any way liable for the amounts claimed.

To support his claim of ratification appellant relies on these facts: (1) That after attaining her majority Miss Thompson paid four semi-annual interest coupons on the mortgage, (2) She reimbursed the mortgagee after demand for taxes paid on the lands by him pursuant to provisions of the mortgage, (3) She wrote the holder of the mortgage asking where a certain interest payment should be made, (4) She wrote the mortgagee that she could not pay the mortgage debt when it came due and requested a renewal, (5) She negotiated with the mortgagee by conference and letters for a renewal of the mortgage.

These facts are not denied, but to counteract them appellee contends that she never recognized the mortgage as her own, nor ever intended to make it binding on herself, but always considered it the obligation of her father who caused her to sign it, and every payment she made on it either for interest or taxes was made with money furnished by her father for that purpose at his suggestion, and that her negotiations with the mortgagee were for the purpose of securing a plan to submit to her father to renew the mortgage.

This was the issue on which the evidence was taken. It shows conclusively that appellee signed the mortgage at the instance of her father without knowing what it was, that the check to cover the loan was given to her father, that she never considered herself bound by the mortgage and so advised the mortgagee, that she paid no charges on the mortgage with her own money, but paid all of them with money sent her by her father, that she placed each interest coupon in her father's trunk as it was returned to her, that

she quit paying when her father quit sending money, that at no time did she promise to pay the mortgage, that not only did she decline to ratify, but in terms disaffirmed the obligation. Such was the predicate for the master's finding.

Except as to a very limited class of contracts considered binding, as for necessities, *et cetera*, the modern rule is that the contract of an infant is voidable rather than void. This rule applies to both executed and executory contracts, but with different application of the word voidable. To say that the executed contract of an infant is voidable means that it is binding until it is avoided by some act indicating that the party refuses longer to be bound by it. To say that·the executory contract of an infant is voidable means that it is capable of being confirmed or avoided, though it is invalid until it has been ratified. 14 R. C. L., page 223, par. 10.

Since the contracts of an infant are voidable or *de facto*, that is to say, subject to the possibility of disaffirmance, it follows that when the infant attains his majority and ratifies a contract made in infancy its infirmity is removed and it will be treated as valid from inception and the optional right to disaffirm abandoned. Ratification does not now require a new consideration to make it binding. 14 R. C. L. 246.

Some of the early cases held that ratification required the same formality and proof as a new contract, but the later view is that ratification may be accomplished by exercising the option not to avoid the contract. The quondam infant is required to do this in express terms or he may do so by some act freely and voluntarily done. He may also ratify by conduct which shows a clear intent to do so or such as will work a fraud on the opposing party if not treated as a ratification. It has been held that if the quondam infant is

aware of the existence of the contract knowledge of his right to affirm or repudiate will be imputed to him. Note, 18 A. S. R. 709, 59 A. L. R. 281.

In the case of executed contracts ratification is more often implied from the conduct of the quondam infant than from express declarations, but in the case of executory contracts ratification must be positive and explicit. It may be verbal if not required to be in writing. A mere acknowledgment is not sufficient. It must be a direct promise to pay or discharge the contract in question. This Court has held that there must not only be an acknowledgment of liability, but an express confirmation or new promise voluntarily and deliberately made by the infant on coming of age, and with the knowledge that he is not legally liable, or bound by the original executory agreement. Summerall v. Thoms and Wife, 3 Fla. 298, text 308.

Any kind of a negotiation to renew or extend the old contract that has to be assented to by the first party does not amount to a ratification of the contract made in infancy. This rule also applies to a promise to pay the debt in part or in any other way than the one stipulated in the contract. When such offers are assented to they become new contracts rather than a ratification of the old one. Edgerly v. Shaw, 25 N. H. 514.

The rule as prescribed in Summerall v. Thoms and Wife, *supra,* is more exacting than that generally required in such cases, but appellant has not brought himself within the general rule as herein stated. The negotiations between appellant and appellee with reference to extension or renewal had reference to a new contract and under the doctrine announced in this opinion did not amount to a ratification of the former contract.

Acts and negotiations with reference to the payment of

interest and taxes, some of which took place before and some after majority, were all done at the direction of the father and there is not a shred of evidence to show that appellee knew that she had made a contract or consciously intended to ratify one that she had made unwittingly. In fact, the evidence shows conclusively that there was no intent whatever to ratify and intent is one of the essentials of ratification. Intent must also be supported by some act amounting to ratification with full knowledge of its consequences. Swiney v. Womack, 343 Ill. 278, 175 N. E. 419; International Text Book Co. v. Connelly, 206 N. Y. 188, 99 N. E. 722; Farnum v. O'Neill, 252 N. Y. S. 900; Note 5 A. L. R. 137.

It is no defense to now contend that appellee did not advise appellant of her minority when the mortgage was executed. She appeared in person, concealed nothing, was not asked as to her age, and did not know what she was there for. There was no occasion to volunteer her age under the circumstances. She did as she was bidden by her father and appellant was present and took part in the transaction. No intentional wrong can, therefore, be charged to appellee.

As to appellee the contract in question was executory and while the rule announced in Summerall v. Thoms, *supra,* is more rigid than that usually exacted in such cases certainly appellee should not have been held to have ratified under the facts in this case before she was conscious of her status with reference to the mortgage and was advised as to the consequences of ratification. Up to the time she disaffirmed the contract there is no showing whatever that she was anything more than a conduit by which her father handled the charges on the mortgage.

It follows that the judgment below must be and is hereby affirmed.

Affirmed.

ELLIS, P. J., and BUFORD, J., concur.

WHITFIELD, C. J., and DAVIS, J., concur in the opinion and judgment.

BROWN, J., concurs in the conclusion.