908 So.2d 392 (2005)
GLOBAL TRAVEL MARKETING, INC., Petitioner,
v.
Mark R. SHEA, etc., Respondent.
No. SC03-1704.
Supreme Court of Florida.
July 7, 2005.
*394 Greg Gaebe of Gaebe, Mullen, Antonelli, Esco and Dimatteo, Coral Gables, FL, Edward S. Polk of Conroy, Simberg, Gannon, Krevans and Abel, P.A., Hollywood, FL and Rodney E. Gould and Brad A. Compston of Rubin, Hay and Gould, P.C., Framingham, MA, for Petitioner.
Philip M. Burlington of Caruso and Burlington, P.A., West Palm Beach, FL, Edward M. Ricci and Scott C. Murry of Ricci-Leopold, West Palm Beach, FL, for Respondent.
Louise H. McMurray and Douglas M. McIntosh of McIntosh, Sawran, Peltz. Cartaya and Petruccelli, P.A., Miami, FL, on behalf of the Florida Defense Lawyers Association and The United States Tour Operators Association as Amici Curiae.
Louise McMurray of Mc McIntosh, Sawran, Peltz. Cartaya and Petruccelli, P.A., Miami, FL, and Alexander Anolik of San Francisco, CA, on behalf of the Association of Retail Travel Agents' and the Outside Sales Support Network as Amici Curiae.
Michelle Hankey, William Booth, Maxine Williams and Barbara B. Briggs, West Palm Beach, FL, on behalf of Legal Aid Society of Palm Beach County as Amicus Curiae.
Steven M. Goldsmith, Boca Raton, FL and Paul D. Jess, General Counsel, Tallahassee, FL, On behalf of The Academy of Florida Trail Lawyers as Amicus Curiae.
PARIENTE, C.J.
We have for review a decision of the Fourth District Court of Appeal in which the court certified a question of great public importance:
Whether a parent's agreement in a commercial travel contract to binding arbitration on behalf of a minor child with respect to prospective tort claims arising in the course of such travel is enforceable as to the minor.
Shea v. Global Travel Mktg., Inc., 870 So.2d 20, 26 (Fla. 4th DCA 2003). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. As phrased by the Fourth District, the issue is narrow, touching only upon binding arbitration and not on any broader contractual waiver of a tort claim brought on behalf of a minor. For the reasons that follow, we determine that the arbitration provision in this commercial travel contract is not unconscionable, in violation of any statutory prohibition, or void as against public policy. Because the mother in this case had authority to enter into this contract on behalf of her minor child, the arbitration provision is valid and enforceable. Accordingly, we answer this narrow question in the affirmative and quash the decision below.

*395 I. FACTS AND PROCEDURAL HISTORY
This case arises from a lawsuit brought by Mark R. Shea (the father) over the tragic death of his eleven-year-old son, Mark Garrity Shea (Garrit), during an African safari that Garrit took with his mother, Molly Bruce Jacobs.[1] Before the trip, Garrit's mother signed a travel contract for the African safari on behalf of herself and her son with Global Travel Marketing.[2] The contract called for Global Travel to provide Jacobs and Garrit a twenty-five-day safari in Zimbabwe and Botswana at a cost of approximately $39,000. The travel contract contained provisions concerning travel documents, medical contingencies, and the travel company's refund and cancellation policy. The contract included an arbitration clause:
Any controversy or claim arising out of or relating to this Agreement, or the making, performance or interpretation thereof, shall be settled by binding arbitration in Fort Lauderdale, FL, in accordance with the rules of the American Arbitration Association. . . .
Regarding Garrit, the contract specifically provided:
I, as parent or legal guardian of the below named minor, hereby give my permission for this child or legal ward to participate in the trip and further agree, individually and on behalf of my child or ward, to the terms of the above.
After Garrit's death, the father, who was named personal representative of his son's estate, brought suit on behalf of the estate and for both parents as survivors under Florida's wrongful death statute. The complaint alleged that Global Travel's failure to fulfill its duty to use reasonable care in operating the safari and warning of dangerous conditions caused his son's death. A jury trial was requested. Global Travel moved to stay the proceedings and compel arbitration of the father's claim. In response, the father argued that Jacobs, the mother, did not have legal authority to contract away Garrit's substantive rights through a release of liability and arbitration clauses. However, in a hearing on Global Travel's motion, counsel for the father acknowledged that the validity of the clause releasing Global Travel from liability was not then before the court, and would likely be an issue in the future. The trial court granted Global Travel's motion to stay the proceedings and compel arbitration, concluding that the arbitration provision bound Garrit's estate. The court did not determine whether the release of liability was enforceable.[3]
*396 The Fourth District reversed. Although it acknowledged that doubt as to the scope of an agreement to arbitrate should be resolved in favor of arbitration, the court determined that "the issue, here, is not one of scope, but of formationwho may be bound by an agreement to arbitrate." Shea, 870 So.2d at 23. The court held:
Although we recognize that it is impractical for a parent to obtain a court order before entering into pre-injury contracts, we cannot accept the notion that parents may, carte blanche, waive the litigation rights of their children in the absence of circumstances supported by public policy. Circumstances in which a waiver would be supported by a recognized public policy include waivers in cases of obtaining medical care or insurance or for participation in commonplace child oriented community or school supported activities. We need not decide, here, what additional circumstances might support such a waiver; it is sufficient to state that commercial travel opportunities are not in that category.
Id. at 25. The Fourth District concluded that because the arbitration agreement was unenforceable as to the child on public policy grounds, the child's estate could not be bound to arbitrate tort claims arising from the safari. See id. at 26.

II. ANALYSIS
The issue in this case is the enforceability of an agreement by a parent on behalf of a minor child to arbitrate claims arising out of a commercial travel contract. Because the validity of the arbitration agreement is a question of law arising from undisputed facts, the standard of review is de novo. See D'Angelo v. Fitzmaurice, 863 So.2d 311, 314 (Fla.2003) (stating that standard of review for pure questions of law is de novo, and no deference is given to the judgment of the lower courts).
Global Travel and the amici curiae supporting its position[4] assert that the Fourth District decision contravenes the requirement in the Federal Arbitration Act (FAA) that questions as to the enforcement of an arbitration agreement be resolved in favor of arbitration, and misapplies public policy by ignoring parents' authority to enter into contracts on behalf of their children. The father and the amici curiae supporting his position[5] assert that the issue is one of state law not governed by the FAA, that the Fourth District correctly applied state law in holding that the mother's agreement to binding arbitration on behalf of her son is unenforceable, and that the public policy of protecting children's interests overcomes parents' right to raise their minor children and authority to enter into contracts on behalf of their minor children.

A. EFFECT OF FEDERAL LAW
Initially, we reject Global Travel's assertion that enforcement of the arbitration agreement is mandated by federal law. Although the Federal Arbitration Act, which applies to both federal and state court proceedings, reflects a strong federal policy in favor of enforcement of agreements to arbitrate, the FAA also provides that an arbitration agreement may be ruled unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2000). The United States Supreme Court has held that under this provision,

*397 state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2. A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law. Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable. . . .
Perry v. Thomas, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (citations omitted). In Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996), the Court noted that generally applicable contract defenses under state law, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening section 2 of the FAA. Accord Orkin Exterminating Co. v. Petsch, 872 So.2d 259, 264 (Fla. 2d DCA), review denied, 884 So.2d 23 (Fla.2004); Powertel, Inc. v. Bexley, 743 So.2d 570, 573-74 (Fla. 1st DCA 1999).
The public policy of protecting children from waiver of their litigation rights, on which the Fourth District decision rests, is a generally applicable contract principle and is not peculiar to arbitration agreements. We have previously held that contract provisions unrelated to arbitration may be ruled unenforceable on public policy grounds. See Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co., 761 So.2d 306, 311 (Fla.2000) (holding that a choice-of-law provision in a contract is enforceable "unless the law of the chosen forum contravenes strong public policy"). As the Fourth District observed, the issue of whether a parent may validly enter into an agreement on behalf of a minor child to waive the child's rights is a question not of the scope of the arbitration agreement but rather of contract formation"who may be bound by an agreement to arbitrate." Shea, 870 So.2d at 23; see also EEOC v. Waffle House, Inc., 534 U.S. 279, 293, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) ("The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it does not require parties to arbitrate when they have not agreed to do so.") (internal quotation marks omitted). Thus, we are not foreclosed by the FAA from determining the enforceability of the arbitration agreement solely on public policy grounds under state law.

B. ENFORCEMENT OF ARBITRATION AGREEMENTS IN GENERAL
In Florida as well as under federal law, the use of arbitration agreements is generally favored by the courts. See Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999). However, this Court has cautioned that "[n]either the statutes validating arbitration clauses nor the policy favoring such provisions should be used as a shield to block a party's access to a judicial forum in every case." Id. at 642. Accordingly, we have held that a statute requiring that every automobile insurance policy for personal injury protection coverage mandate arbitration of claims disputes involving an assignee of benefits violated medical providers' access to courts under article I, section 21 of the Florida Constitution. See Nationwide Mut. Fire Ins. Co. v. Pinnacle Medical, Inc., 753 So.2d 55, 57 (Fla.2000). We concluded that, unlike cases in which we have upheld mandatory arbitration legislation, the medical providers' ability to *398 pursue a remedy in court was not replaced with rights of equal or greater value. See id. at 59.
Agreements to arbitrate are treated differently from statutes compelling arbitration. The difference arises because the rights of access to courts and trial by jury may be contractually relinquished, subject to defenses to contract enforcement including voidness for violation of the law or public policy, unconscionability, or lack of consideration. See generally Mazzoni Farms, 761 So.2d at 311 (recognizing public policy limitation on choice of law provision in contract); Powertel, Inc., 743 So.2d at 577 (holding arbitration clause in service contract unconscionable); Vichaikul v. S.C.A.C. Enters., Inc., 616 So.2d 100, 100 (Fla. 2d DCA 1993) ("[F]ailure of consideration is a defense to the contract."). In determining whether to compel arbitration pursuant to the parties' agreement, a court must consider three elements: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived. See Seifert, 750 So.2d at 636.
As stated above, the question of whether a minor child or minor child's estate may be bound by an agreement to arbitrate made by a parent or guardian on the child's behalf is a question of contract formationwhether a valid agreement to arbitrate exists. No valid agreement exists if the arbitration clause is unenforceable on public policy grounds. Thus, the issue in this case concerns competing interests: that of the state to protect children and that of parents in raising their children. Where these interests clash on a concrete issue such as the enforceability of a contract entered into on behalf of a minor child, the issue becomes one for the courts.

C. PARENTS AND THE STATE AS GUARDIANS OF MINORS' LITIGATION RIGHTS
In this case, the trial court based its enforcement of the arbitration agreement on the "well established principle that parents have a fundamental liberty interest in the care, custody and management of their offspring." The Fourth District, while acknowledging that Florida law recognizes parental authority to contract for their children to obtain medical care, nonetheless rejected "the notion that parents may, carte blanche, waive the litigation rights of their children in the absence of circumstances supported by public policy." Shea, 870 So.2d at 25. Thus, the issue as framed by the decisions in the circuit and district courts is whether the state, through the courts and for reasons of public policy, can override a parent's right to make this decision by refusing to enforce its consequences.

1. PARENTAL AUTHORITY
Parental authority over decisions involving their minor children derives from the liberty interest contained in the Fourteenth Amendment to the United States Constitution and the guarantee of privacy in article I, section 23 of the Florida Constitution. The United States Supreme Court, in ruling unconstitutional a grandparent visitation statute enacted in Washington, stated that "it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion). The Court concluded that "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because *399 a state judge believes a `better' decision could be made." Id. at 72-73, 120 S.Ct. 2054 (plurality opinion).
In several cases beginning with Beagle v. Beagle, 678 So.2d 1271, 1272 (Fla.1996), this Court has held that laws mandating grandparent visitation violate article I, section 23. In addition, this Court has "on numerous occasions recognized that decisions relating to child rearing and education are clearly established as fundamental rights within the Fourteenth Amendment of the United States Constitution." Von Eiff v. Azicri, 720 So.2d 510, 513 (Fla.1998). Thus, in general, "[n]either the legislature nor the courts may properly intervene in parental decisionmaking absent significant harm to the child threatened by or resulting from those decisions." Id. at 514.

2. THE STATE AS PARENS PATRIAE
The father, relying on the Fourth District decision, recognizes parents' broad authority over their children but asserts that the State has greater authority as "parens patriae" to rule the arbitration agreement in this case unenforceable because it is contrary to public policy.
"Parens patriae," which is Latin for "parent of his or her country," describes "the state in its capacity as provider of protection to those unable to care for themselves." Black's Law Dictionary 1144 (8th ed.2004). The doctrine derives from the common-law concept of royal prerogative, recognized by American courts in the form of legislative prerogative. See Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez, 458 U.S. 592, 600, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982). The United States Supreme Court, upholding a state child labor law in Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), recognized the parens patriae power when it stated that although the "custody, care, and nurture of the child reside first in the parents, . . . the state as parens patriae may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor and in many other ways." Id. at 166, 64 S.Ct. 438 (footnotes omitted).
In decisions over the past three decades, this Court has expressly relied on the state's parens patriae authority to protect children in two areas: (1) juvenile delinquency and dependency, see P.W.G. v. State, 702 So.2d 488, 491 (Fla.1997); State v. D.H., 340 So.2d 1163, 1166 (Fla.1976); In re Camm, 294 So.2d 318, 320 (Fla.1974); and (2) child custody and support. See Schutz v. Schutz, 581 So.2d 1290, 1293 (Fla.1991); Lamm v. Chapman, 413 So.2d 749, 753 (Fla.1982); Kern v. Kern, 333 So.2d 17, 19 (Fla.1976). Pervasive statutory schemes cover each of these areas. See generally ch. 39, Fla. Stat. (2004) ("Proceedings Relating to Children"); ch. 61, Fla. Stat. (2004) ("Dissolution of Marriage; Support; Custody"); ch. 984, Fla. Stat. (2004) ("Children and Families in Need of Services"); ch. 985, Fla. Stat. (2004) ("Delinquency; Interstate Compact on Juveniles").
Although there is no statutory prohibition on agreements to arbitrate minors' tort claims, the Fourth District deemed statutes governing settlement of minors' civil claims to be analogous to a pre-injury arbitration agreement. Under section 744.301(2), Florida Statutes (2004), parents, acting as the natural guardians of their minor children,[6] may settle their children's claims for amounts up to $15,000. *400 A net settlement greater than $15,000 on behalf of a minor requires establishment of a legal guardianship. See § 744.387(2), Fla. Stat. (2004). If a legal guardian and a minor have potentially adverse interests, or if otherwise necessary, the trial court may, for a settlement greater than $15,000, and must, for a settlement greater than $25,000, appoint a guardian ad litem to represent the minor's interests. See § 744.301(4)(a); Fla. Stat. (2004). A presuit settlement on behalf of a minor requires court authorization, which may be given if the court determines that the settlement is in the minor's best interest. See § 744.387(1), Fla. Stat. (2004). Settlement of a pending claim also requires court approval. See § 744.387(3)(a), Fla. Stat. (2004).
There is no comparable statutory scheme governing pre-injury liability releases and arbitration agreementsthose executed before any cause of action accruesand no statute requiring a parent to obtain court approval before agreeing to arbitrate a claim once it has been filed. Thus, with the exception of disputes involving child custody, visitation, or child support, See § 44.104(14), Fla. Stat. (2004), the Legislature has not precluded voluntary binding arbitration of claims involving children.

D. OUT-OF-STATE PRECEDENT
The Fourth District cited precedent from supreme courts of other states invalidating, on public policy grounds, pre-injury releases of liability signed by parents on behalf of their children. See Shea, 870 So.2d at 23-24. In the first of these decisions, the Washington Supreme Court held that enforcement of an exculpatory agreement that released a ski school from any liability for injury, signed by a parent on behalf of a minor child participating in the school, was contrary to public policy. Scott v. Pac. W. Mountain Resort, 119 Wash.2d 484, 834 P.2d 6, 11-12 (1992). The court relied on precedent in other jurisdictions and on a state law, similar to section 744.387, Florida Statutes, that required court approval for parents to settle or release a child's post-injury claim. See id. at 11. In Hawkins v. Peart, 37 P.3d 1062, 1066 (Utah 2001), the Utah Supreme Court relied on similar statutory protections of minors' post-injury claims, as well as the statutory right to disaffirm contracts entered into during minority, to hold unenforceable a pre-injury release signed by an eleven-year-old child subsequently injured when she was thrown from a horse. The court stated that "[a]s in Scott, we see little reason to base the validity of a parent's contractual release of a minor's claim on the timing of an injury." Id. Most recently, the Colorado Supreme Court, relying on that state's laws concerning oversight of the settlement of minors' legal claims, held that a release and indemnity agreement signed by the parent of a minor who was a competitive skier was unenforceable in a negligence action against a ski club after an accident in which the minor was rendered blind. See Cooper v. Aspen Skiing Co., 48 P.3d 1229, 1232-34 (Colo.2002). All three decisions rest on public policy grounds, and each court cited precedent to support its conclusion that it was siding with the clear majority of jurisdictions that had considered the issue. See id. at 1234-36; Hawkins, 37 P.3d at 1065-66; Scott, 834 P.2d at 12.
Significantly, the court in Cooper opined that its decision was not inconsistent with the due process right of parental decisionmaking recognized in Troxel and other United States Supreme Court precedent. The court concluded that a parental release of a child's right to sue for negligence is "not of the same character and quality as those rights recognized as implicating *401 parents' fundamental liberty interest in the `care, custody and control' of their children." Cooper, 48 P.3d at 1235 n. 11. The court also pointed to the United States Supreme Court's recognition in Prince, 321 U.S. at 166, 64 S.Ct. 438, of the state's parens patriae authority to guard the "general interest in youth's well being," in some circumstances contrary to parental control. Id.
The Massachusetts Supreme Court has reached a contrary conclusion, holding that because a child's "participation in the city's extracurricular activity of cheerleading was neither compelled nor essential, . . . the public policy of the Commonwealth is not offended by requiring a release as a prerequisite to that participation." Sharon v. City of Newton, 437 Mass. 99, 769 N.E.2d 738, 745 (2002). Similarly, the Ohio Supreme Court has held that a parent may bind his or her child to a provision releasing volunteers and sponsors of a nonprofit sports activity from liability for negligence. See Zivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367, 696 N.E.2d 201, 205 (1998).[7]
Thus, the courts in Cooper, Hawkins, and Scott ruled invalid, on public policy grounds, pre-injury releases of liability entered into by a parent on behalf of a minor child participating in activities with a for-profit business outside a school or community setting, while the courts in Sharon and Zivich upheld such releases in connection with school, community, and volunteer-run activities. One court has justified the distinction represented by these cases on grounds that the potential liability "is a risk against which a for-profit business may insure itself." Rice v. Am. Skiing Co., No. Civ.A.CV-99-06, 2000 WL 33677027, at *3 (Me.Super.Ct. May 8, 2000). These decisions are instructive on the issue we decide today, but only to a point, because none of them concerned arbitration agreements. Whether a parent may waive his or her child's substantive rights is a different question from whether a parent may agree that any dispute arising from the contract may be arbitrated rather than decided in a court of law.
More pertinent to the issue in this case are the out-of-state cases dealing with an advance agreement by parents to arbitrate any legal claims of minors or their estates.[8] One line of precedent centers on contracts for medical services. For example, in Doyle v. Giuliucci, 62 Cal.2d 606, 43 Cal.Rptr. 697, 401 P.2d 1, 3 (1965), the California *402 Supreme Court held that a minor could be bound to an arbitration clause in a medical service contract signed by a parent on the child's behalf. The court concluded that because minors can be assured of group medical service only if parents can contract on their behalf, in fulfilling their duty to provide care for their children parents should have the authority to agree to arbitrate disputes that arise under the contract. See id.; accord Leong v. Kaiser Found. Hosp., 71 Haw. 240, 788 P.2d 164, 169 (1990) (relying on Doyle to hold that a minor could not disaffirm an arbitration provision in a contract for medical care signed by his father).
In this case, the Fourth District distinguished Doyle on grounds that a commercial travel contract evokes different policy concerns than a contract for medical care. See Shea, 870 So.2d at 24-25. This determination is consistent with the law of necessaries (or necessities), under which children, who normally are incompetent to contract, may be bound to the terms of contracts for necessary services such as medical treatment. See Lee v. Thompson, 124 Fla. 494, 168 So. 848, 850 (1936) ("Except as to a very limited class of contracts considered binding, as for necessities, etc., the modern rule is that the contract of an infant is voidable. . . ."). Thus, Doyle was correctly distinguished below.
In Troshak v. Terminix International Co., No. CIV.A.98-1727, 1998 WL 401693, at *5 (E.D.Pa. July 2, 1998), a federal district court held that a pre-injury arbitration agreement by a parent on behalf of a minor child was unenforceable in a personal injury suit subsequently brought by the minor. Attempting to discern Pennsylvania law in a case of first impression, the federal court relied on two previous federal district court decisions holding that there is no authority for parents to execute a pre-injury release of liability on behalf of a minor child. See id. at *4-5. Extrapolating from these cases, the court concluded that "[i]f a parent cannot prospectively release the potential claims of a minor child, then a parent does not have authority to bind a minor child to an arbitration provision that requires the minor to waive their right to have potential claims for personal injury filed in a court of law." Id. at *5. Troshak appears to rest on the same public policy rationale relied upon by the Fourth District in this case.
An intermediate Ohio appellate court reached the opposite conclusion in Cross v. Carnes, 132 Ohio App.3d 157, 724 N.E.2d 828 (1998). The court extended Zivich, in which the Ohio Supreme Court held an exculpatory agreement enforceable against a minor participating in a nonprofit activity run by volunteers, to require arbitration of the claim of a minor who filed suit against the producers of a commercial television talk show on which she was portrayed as a bully. See id. at 836. The court also distinguished arbitration clauses from releases of liability:
[W]e note that the parent's consent and release to arbitration only specifies the forum for resolution of the child's claim; it does not extinguish the claim. Logically, if a parent has the authority to bring and conduct a lawsuit on behalf of the child, he or she has the same authority to choose arbitration as the litigation forum.
Id.

E. THIS CASE
The trial court in this case relied on the passage from Cross quoted above to compel arbitration, but the Fourth District, in reversing, relied instead on the limits placed on parental waiver in other areas: "[W]e can discern no common sense reason to depart from the public policy favoring the protection of children from *403 waiver of their basic rights by a parent." Shea, 870 So.2d at 25. The Fourth District did not distinguish between releases of liability and arbitration clauses for purposes of its public policy analysis. Nor, apart from categorizing the African safari as a commercial travel opportunity, did the Fourth District relate the safari to other experiences and activities that parents might choose to make available to their minor children. See id.
The Fourth District decision thus implicitly rests on two conclusions: the opportunity to present a claim in court is so basic a right that its waiver is tantamount to a forfeiture of the claim, and the benefits to children of commercial travel opportunities do not justify enforcement of a parent's decision to agree to arbitrate a child's claims arising out of the travel contract. We disagree.
As to the first conclusion, the nature of the waiver agreed to by a parent on behalf of a childwhether it concerns waiver of a legal claim or right, or waiver of the forum in which the claim is presentedis a crucial consideration in determining whether the state's interest in protecting children renders the waiver unenforceable. While the rights of access to the courts and trial by jury are valuable constitutional rights, we cannot equate a pre-injury release of liability with a pre-injury agreement to arbitrate. As noted by the Ohio court in Cross, such an agreement "does not extinguish the claim." 724 N.E.2d at 836. Instead, an arbitration agreement constitutes a prospective choice of forum which "trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). The relative advantages and disadvantages of arbitration and litigation may make one path or another preferable to a party, but nothing in the opinion below, the arguments of the parties, or our precedent suggests that an arbitration clause alone is tantamount to waiver or forfeiture of a wrongful death or personal injury claim. In recognizing this distinction, we emphasize that we are assessing only the enforceability of the arbitration clause in this case, and not the release clause.
Further, the lack of a statutory requirement for court involvement in pre-injury arbitration agreements provides a basis for treating these agreements differently from settlements of lawsuits involving minors' claims, for which appointment of a guardian ad litem and court approval are necessary under certain circumstances pursuant to sections 744.301 and 744.387, Florida Statutes (2004). The Legislature has chosen to authorize court protection of children's interests as to extant causes of action, but has not exercised its prerogative as parens patriae to prohibit arbitration of those claims. Instead, the Legislature has specifically authorized enforcement of agreements to arbitrate pending civil disputes while specifically exempting only disputes involving custody, support, and visitation. See § 44.104(14), Fla. Stat. (2004).
The Fourth District decision also reflects an arbitrary distinction between those activities for which an agreement to arbitrate is supported by public policy, and "commercial travel opportunities," where a parental agreement to arbitrate may be overridden by the state. The court acknowledged the legitimacy of waivers for purposes of obtaining medical care and insurancewhich involve the health and security of the child with no educational componentand for "commonplace child oriented community or school supported activities." Shea, 870 So.2d at 25.
*404 The distinction drawn by the Fourth District notwithstanding, the line dividing commonplace activities from commercial travel opportunities is far from clear, given that some commonplace school or community activities might also involve commercial travel. The Fourth District decision might prevent arbitration of claims of minors arising from their parents' decisions in individually authorizing activities that involve commercial travel, but not from the decisions of school authorities in arranging for the same activity.
We see no basis in fact or law for this distinction, nor a reliable standard by which to apply it without making value judgments as to the underlying activity that the parent has deemed appropriate for the child to engage in.[9] Moreover, the alternative of requiring parents to seek court approval before entering into commercial travel contracts that include arbitration agreements would place courts in a position of second guessing the decisionmaking of a fit parent. As the United States Supreme Court observed in Troxel,
there is a presumption that fit parents act in the best interests of their children. . . . Accordingly, so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.
530 U.S. at 68-69, 120 S.Ct. 2054 (plurality opinion). There is no indication in this case that the mother was unfit or that the African safari was so inherently dangerous that she failed to act in her child's best interests in allowing him to participate in this adventure.
Travel's beneficial effects on the young are well known. Sir Francis Bacon wrote that "travel, in the younger sort, is a part of education; in the elder, a part of experience." The Oxford Dictionary of Quotations 27 (3d ed.1979). Had Garrit survived, the safari (his second) could have significantly broadened his horizons, possibly leading him to pursue a career in zoology or wildlife conservation, or it might have enhanced and sustained a lifelong interest in the people, cultures, wildlife, and geography of the African continent.[10]
Parents' authority under the Fourteenth Amendment and article I, section 23 encompasses decisions on the activities appropriate for their childrenwhether they be academically or socially focused pursuits, physically rigorous activities such as football, adventure sports such as skiing, horseback riding, or mountain climbing, or, as in this case, an adventure vacation in a game reserve. Parents who choose to allow their children to engage in these activities may also legitimately elect on their children's behalf to agree in advance to arbitrate a resulting tort claim if the risks of these activities are realized.
*405 Just as the mother in this case had the authority to enter into a contract for herself and her minor child to travel to Africa for a safari, she also had the authority to agree to arbitrate claims on his behalf arising from that contract. In the absence of legislation restricting agreements to arbitrate the potential claims of minors, enforcement of these agreements in commercial travel contracts is not contrary to the public policy of protecting children.

III. CONCLUSION
For the reasons set forth above, we hold that an arbitration agreement incorporated into a commercial travel contract is enforceable against the minor or minor's estate in a tort action arising from the contract. We emphasize that we decide only the narrow issue presented by the certified question. Because the validity of the release of liability in the travel contract in this case is not before us, we express no opinion whether the release is enforceable or whether its enforceability should be decided by the trial court or by arbitration. Accordingly, we answer the certified question in the affirmative, quash the decision of the Fourth District, and remand for proceedings not inconsistent with this opinion.
It is so ordered.
WELLS, ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
LEWIS, J., dissents.
NOTES
[1] The complaint alleges that during the course of the safari, one or more hyenas dragged Garrit from the tent where he was sleeping alone and mauled him to death.
[2] Garrit's parents are divorced. Although the record does not reveal which parent had primary custody of Garrit, the father does not contend that the mother lacked authority to sign the arbitration agreement on her son's behalf.
[3] The issue of the pre-injury waiver of liability and whether that issue should be determined in a court of law or in arbitration is not before us. The release of liability reads as follows:

I have been informed and am aware that ADVENTURE TRAVEL CAN BE DANGEROUS and includes certain risks and dangers, including but not limited to . . . dangers of wild animals. . . .
I HEREBY RELEASE, WAIVE, INDEMNIFY, and AGREE NOT TO SUE THE AFRICA ADVENTURE COMPANY . . . for any and all losses, damages, or injuries or any claim or demand on account of injury or emotional trauma . . . or on account of death resulting from any cause . . . while the undersigned is participating in a tour or any travel or other arrangements by THE AFRICA ADVENTURE COMPANY. . . .
[4] The Florida Defense Lawyers Association, the United States Tour Operators Association, and the Association of Retail Travel Agents and Outside Sales Support Network.
[5] The Academy of Florida Trial Lawyers and the Legal Aid Society of Palm Beach County.
[6] For children of divorced parents, "the natural guardianship shall belong to the parent to whom the custody of the child is awarded." § 744.301(1), Fla. Stat. (2004).
[7] Persuaded by the reasoning in Zivich, the Fourth District in this case crafted an exception for "non-profit entities, their employees, and volunteers" to its holding that arbitration provisions agreed to by parents on behalf of their children in commercial travel contracts are not enforceable. Shea, 870 So.2d at 25.
[8] Because the mother signed the contract on her own behalf and on her son's behalf, this case is distinguishable from precedent holding that arbitration of minor's claims cannot be compelled where there was no advance agreement to arbitrate the minor's claim and the minor was not a third-party beneficiary of the contract. See, e.g., Fleetwood Enters., Inc. v. Gaskamp, 280 F.3d 1069, 1077 (5th Cir.2002) (ruling that children who were not signatories to contract, not third-party beneficiaries, and not suing on the basis of the contract were not bound by arbitration agreement signed by their parents), modified, 303 F.3d 570 (5th Cir.2002); Costanza v. Allstate Insurance Co., No. CIV.A.02-1492, 2002 WL 31528447, at *7 (E.D.La. Nov. 12, 2002) (determining that because children in bringing personal injury claims did not seek to enforce provisions of contract and were not third-party beneficiaries of contract, claims were not subject to arbitration clause); see also Accomazzo v. CEDU Educ. Servs., Inc., 135 Idaho 145, 15 P.3d 1153, 1156 (2000) (concluding that trial court did not err in ruling that a child who was a third-party beneficiary of an education contract signed by his father was not bound to an arbitration clause which did not mention the child).
[9] The Third District, citing Shea, has held that a city's fire rescue explorer program is an activity for which public policy supports a pre-injury release of liability executed by a parent in authorizing the child's participation. See Gonzalez v. City of Coral Gables, 871 So.2d 1067, 1067 (Fla. 3d DCA 2004). Because the issue of a pre-injury waiver of all liability is not before us, we do not address the Third District's decision in Gonzalez.
[10] Global Travel states in its initial brief that Garrit "had, by all accounts, become enthralled with Africa and with the animals he saw in the bush during a similar safari the year before his tragic death, returning from that safari to read up on those animals and study the matter exhaustively." The father does not dispute these representations.