In re the COMPLAINT OF ROYAL CARIBBEAN CRUISES LTD., as owner of the unnamed 2002 Yamaha Wave Runner XL 700, 80HP Vessel, Serial Number YAMA1323K102, for Exoneration from or Limitation of Liability.

No. 03–21868–CIV.

United States District Court, S.D. Florida.

Nov. 18, 2005.

Jeffrey Bradford Maltzman, Maltzman, Foreman, PA, Miami, FL, for Plaintiff Royal Caribbean Cruises Ltd.

C. Randall Austin, Austin & Payne, Coral Springs, FL, for Claimant Jerry Miller and Scott Miller.

## ORDER ON PETITIONER'S MOTION TO REOPEN CASE AND RENEWED MOTION FOR SUMMARY JUDGMENT

HUCK, District Judge.

THIS MATTER is before the Court upon Petitioner Royal Caribbean Cruises, Ltd.'s Motion to Reopen Case and Renewed Motion for Summary Judgment [DE# 47] (the "Motion"). The Court has reviewed the Motion, the opposition thereto, the reply in support thereof and other pertinent portions of the record, and is otherwise duly advised in the premises. For the reasons set forth below, Royal Caribbean's Motion is GRANTED.

### BACKGROUND

On August 14, 2002, Claimants Scott Miller and Jerry Miller—a father and his minor child, respectively—rented a jet ski (the "WaveRunner") owned by Royal Caribbean on the island of Coco Cay, Bahamas. Complaint, ¶ 8.[1] Prior to operating the WaveRunner, Scott Miller was required to sign a form titled "Express Assumption of Risk—Waiver & Release of Liability" (the "Release"), which provided that the renter of the WaveRunner:

> . . . being over the age of 18, and in consideration of being permitted to rent and operate a PERSONAL WATERCRAFT ("Waverunner"), do, for myself, my spouse, my heirs, executors, administrators, successors and assigns, **HEREBY FULLY RELEASE AND FOREVER DISCHARGE** ROYAL CARIBBEAN CRUISES LTD., BLACKBEARD'S CAY LTD., R AND S WATERSPORTS LTD., ITS EMPLOYEES . . . of and from any and all actions, causes or right of action, suits, damages, judgments, executions, claims and demands whatsoever . . . ARISING FROM ANY ACCIDENT, INJURY OR PROPERTY DAMAGE WHATSOEVER, RELATED TO, RESULTING FROM, OR IN ANY WAY CONNECTED WITH, RELEASOR'S RENTAL, PARTICIPATION, USE OR OPERATION OF SAID PERSONAL WATERCRAFT.

Royal Caribbean's Motion, Exh. 3 (emphasis in original).[2]

Scott Miller executed the Release on his and his minor son Jerry's behalf. Scott Miller then engaged in operating of the WaveRunner with Jerry seated on the back. Around 1:30 pm, Martin Grose, Jr., an individual operating another jet ski, struck the Miller's WaveRunner, injuring Jerry Miller.

Anticipating claims by Scott and Jerry Miller, Royal Caribbean filed a Verified Complaint for Exoneration from or Limitation of Liability. Royal Caribbean sought to limit its liability to the value of its WaveRunner, $4,576.50.[3] Scott Miller thereafter asserted a claim, along with and on behalf of Jerry Miller, seeking to recover for losses arising from Jerry's injuries resulting from Royal Caribbean's negligence. In addition, Scott Miller alleges

---

1. This Court reviews the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, and must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party to determine whether that evidence could reasonably sustain a jury verdict. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

2. The Millers have not raised an objection to the authenticity of the Release provided by Royal Caribbean as Exhibit 3 of its Renewed Motion for Summary Judgment and, thus, this Court deems its authenticity undisputed.

3. *See* Order for Ad Interim Stipulation (D.E.# 10).

his own injuries as a result of negligent infliction of emotion distress by Royal Caribbean. Royal Caribbean, in turn, moved for summary judgment on the grounds that: (i) Scott Miller signed and executed a valid written waiver and release for both himself and his minor son, Jerry, which precludes all of their claims; (ii) the Millers cannot sustain a claim for negligence, as their sole basis for alleging a breach of duty-that the individual who struck their Waverunner was a minor operating the jet ski in violation of Royal Caribbean's own policies prohibiting use by minors-is unsustainable since Martin Grose was 18 years of age at the time.

## ANALYSIS

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The purpose of summary judgment is "to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)(quoting Fed. R.Civ.P. 56 advisory committee's note). Accordingly, to prevail, the moving party must either: (1) show that the non-moving party has no evidence to support its case, or (2) present "affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir.1991) (en banc); *Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1170 (11th Cir.1995). The non-moving party "may not rest upon the mere allegations or denials of [their] pleading, but [their] response, by affidavits or as otherwise provided in [Rule 56(e)],

must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(c).

### A. *Waiver and Release*

i. Scott Miller

█ Royal Caribbean asserts that the Release signed by Scott Miller precludes his ability to seek recovery from Royal Caribbean for any injuries related to his operation of the WaveRunner on August 14, 2002. This Court agrees.

Prior to renting the WaveRunner, Scott Miller signed a document within which he specifically agreed to fully release Royal Caribbean from claims related to his use or operation of the WaveRunner. Similar releases of liability in rental agreements for personal watercrafts have been enforced by courts. *See, e.g., Waggoner v. Nags Head Water Sports, Inc.*, 141 F.3d 1162, 1998 AMC 2185 (4th Cir.1998)(affirmed dismissal of claims by injured jet ski rider based on liability waiver in the rental contract).

However, to enforce such releases, courts generally require that the contractual language at issue be "*clear and unequivocal* and clearly indicate[ ] the intentions of the parties." *Edward Leasing Corp. v. Uhlig & Assocs., Inc.*, 785 F.2d 877, 889 (11th Cir.1986)(emphasis added); *Sander v. Alexander Richardson Invs.*, 334 F.3d 712, 715 (8th Cir.2003)(recognizing that "it is universally agreed that exculpatory clauses...must 'be clearly and unequivocally expressed.'"); *Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equipment Co.*, 374 So.2d 487 (Fla.1979)(noting that contractual releases are enforced only if they express an intent to indemnify against the indemnitee's own wrongful acts in clear and unequivocal terms); *Theis v. J & J Racing Promotions*, 571 So.2d 92 (Fla. 2d DCA 1990).

In this case, the clause at issue states in bold, capital letters that the renter shall, **"HEREBY FULLY RELEASE AND FOREVER DISCHARGE"** all relevant parties, including Royal Caribbean, from any action "ARISING FROM ANY ACCIDENT, INJURY OR PROPERTY DAMAGE WHATSOEVER, RELATED TO, RESULTING FROM, OR IN ANY WAY CONNECTED WITH" use of the WaveRunner. This language clearly and unambiguously seeks to release Royal Caribbean from liability stemming from Scott Miller's use of the WaveRunner. Thus, this Court finds those requisite conditions satisfied here and, accordingly, that Royal Caribbean's Motion regarding the claims of Scott Miller is hereby GRANTED.

ii. Jerry Miller

■ Royal Caribbean also asserts that, based on the Release signed by his father, Jerry Miller, a minor child, should be precluded from bringing suit against Royal Caribbean for his alleged injuries. This Court does not agree.

On April 7, 2004, Royal Caribbean filed a Motion for Summary Judgment based, in part, on the ground that Jerry Miller, a minor, was likewise bound by the Release signed on his behalf (D.E.# 29). This Court denied that motion, without prejudice, based on the parties' representations that the Florida Supreme Court's decision in *Global Travel Marketing, Inc. v. Shea*, 908 So.2d 392 (Fla.2005), pending at the time Royal Caribbean's summary judgment motion was considered, would likely resolve the issue of whether a parent can legally waive and release the claims of his minor child by executing a waiver and release on behalf of the minor child. Accordingly, the Court felt it appropriate to wait for the Florida Supreme Court's decision in *Shea*. The Florida Supreme Court has since ruled. However, the ruling, although instructive, does not directly apply to the particular issue involved in this case.

The *Shea* case arose from a lawsuit brought by the father of a child who was killed while traveling on an African safari with his mother. 908 So.2d at 394. Prior to the trip, the mother had signed a commercial travel contract with the travel agency that contained an arbitration clause which required that "[a]ny controversy or claim arising out of or relating to this Agreement" be settled by binding arbitration. *Id.* After the child's death, the father, who was named as personal representative of his son's estate, brought suit against the travel agency on behalf of the estate and both parents. *Id.* at 395. The trial court granted the travel agency's motion to stay the proceedings and compel arbitration, based on the arbitration clause signed by the child's mother. *Id.* The Fourth District Court of Appeals reversed, but certified the following question to the Florida Supreme Court:

> Whether a parent's agreement in a commercial travel contract to binding arbitration on behalf of a minor child with respect to prospective tort claims arising in the course of such travel is enforceable as to the minor.

*Id.* at 394; *Shea v. Global Travel Mktg., Inc.*, 870 So.2d 20, 26 (Fla. 4th DCA 2003).

The Florida Supreme Court answered the certified question in the affirmative, holding that "an arbitration agreement incorporated into a commercial travel contract is enforceable against the minor or minor's estate in a tort action arising from the contract." *Shea*, at 405. However, the court cautioned, "We emphasize that we decide only the narrow issue presented by the certified question...*[W]e express no opinion whether the release is enforceable* or whether its enforceability should

be decided by the trial court of by arbitration." *Id.* at 404 (emphasis added).

In fact, the court repeatedly cautioned against a broader reading of its opinion. For example, prior to engaging in its analysis, the court explained that "the issue is narrow, touching only upon binding arbitration and *not on any broader contractual waiver of a tort claim brought on behalf of a minor.*" *Id.* at 394 (emphasis added). The court thereafter stated, "The [Fourth District Court of Appeal] did not determine whether the release of liability was enforceable . . . . The issue of the pre-injury waiver of liability and whether that issue should be determined in a court of law or in arbitration is not before us . . . ." *Id.* at 396 n. 3. In other words, "[w]hether a parent may waive his or her child's substantive rights is a different question from whether a parent may agree that any dispute arising from the contract may be arbitrated rather than decided in a court of law." *Id.* at 401.

Yet, despite its foregoing cautionary statements, the Florida Supreme Court briefly analyzed the out-of-state precedent on the broader issue-presently before this Court-of the enforceability of parental pre-injury releases of liability on behalf of minors. Its analysis provides some guidance here.

The *Shea* court highlighted the five out-of-state supreme court cases that have previously dealt with the issue of parental pre-injury releases of liability on behalf of minors. *Id.* at 400–02. It noted a distinction between parental releases involving activities relating to a school, community, or volunteer-run event-for which the courts uphold the releases—and those for private, for-profit activities-for which the courts invalidated the releases:

Thus, the [Washington, Utah and Colorado Supreme Courts] ruled invalid, on public policy grounds, pre-injury releases of liability entered into by a parent on behalf of a minor child participating in activities with a for-profit business outside a school or community setting, while the [Massachusetts and Ohio Supreme Courts] upheld such releases in connection with school, community, and volunteer-run activities.

908 So.2d at 401.

The Florida Supreme Court also referred to one lower court opinion which attempted to justify this distinction on grounds that the potential liability "is a risk against which a for-profit business may insure itself." *Id.; See Rice v. Am. Skiing Co.,* 2000 WL 33677027, at *1, 2000 Me.Super. LEXIS 90, at *3 (Me.Super.Ct. May 8, 2000).

In addition to *Shea,* the Third District Court of Appeals of Florida had considered a parental pre-injury release of a minor child's rights against the city of Coral Gables in *Gonzalez v. City of Coral Gables,* 871 So.2d 1067 (Fla. 3d DCA 2004). In *Gonzalez,* a child claimed injuries from participation in a school-sponsored program which simulated fire rescue training. *Id.* at 1067. To participate in the program, the student's parent or guardian was first *required to sign a release of liability against the city of Coral Gables. Id.* Enforcing the release and precluding suit against the city, the court cited to the Fourth District Court of Appeals' decision in *Shea* and stated that the Coral Gables school program "falls within the category of commonplace child oriented community or school supported activities for which a parent or guardian may waive his or her child's litigation rights in authorizing the child's participation." *Id.* This decision is consistent with the factual distinction noted by the Florida Supreme Court's decision in *Shea.* Thus, while *Shea* did not definitively answer the specific question before the Court, it, together with *Gonza-*

*lez*, suggests that where, as here, a release of liability is signed on behalf of a minor child for an activity run by a for-profit business, outside of a school or community setting, the release is typically unenforceable against the minor.

Accordingly, this Court concludes that, given the factual predicate here of a private activity provided by a for-profit business, under Florida law the Release signed by Scott Miller should not be enforced against his minor child, Jerry Miller, so as to preclude Jerry Miller's right to bring suit against Royal Caribbean. Thus, Royal Caribbean's Motion, with respect to the claims of Jerry Miller having been released by his father, cannot be granted.

## B. *Negligence–Renting to a Minor* [4]

Royal Caribbean does, however, assert an alternate basis for its motion—that, as a matter of law, the Millers cannot prove their negligence claim. The Millers allege in their Complaint that Royal Caribbean owed them a duty "to prohibit the use [of a jet ski] by a minor operator under its own regulation and policy," and then breached that duty by "permitting their minor guest [Martin Grose, Jr.] to operate a jet ski in violation of their own regulation and policy...." Complaint, ¶¶ 14, 15. Royal Caribbean moves for summary judgment on the ground that the unrefuted evidence establishes that Grose was not a minor as of the date of the accident and, according-

ly, Royal Caribbean did not negligently violate any policy prohibiting the rental of jet skis to minors. In support of this position, Royal Caribbean submits Grose's affidavit, which states, in relevant part:

> I was a passenger aboard the MAJESTY OF THE SEAS on a cruise that departed on August 12th, 2002, along with my family. *At the time of the cruise. I was eighteen (18) years old.*

The Millers have failed to put forth any evidence refuting Grose's statement that he was eighteen years of age on the date the accident occurred. Therefore, this Court must accept Grose's statement as true. *See, e.g., Opp v. Wheaton Van Lines and Soraghan Moving & Storage*, 231 F.3d 1060 (7th Cir.2000)(accepting statement in affidavit submitted by defendants as true on summary judgment motion where plaintiff failed to refute such statement by counter-affidavit). Since the Millers are unable to prove any factual dispute with respect to Grose's age, they cannot support their allegation that Royal Caribbean was negligent by permitting a minor to operate the jet ski which caused them damages. Accordingly, Royal Caribbean's Motion, with respect this argument, must be granted.[5]

## CONCLUSION

For all of the foregoing reasons, Royal Caribbean's Motion for summary judg-

---

4. The Millers filed their Complaint on August 25, 2003 (D.E.# 13). On May 6, 2004, after Royal Caribbean had filed its motion for summary judgment, the Millers sought to amend the Complaint (D.E.# 32). The Court denied their request (D.E.# 41). Accordingly, the only claim presently before the Court on this Motion is the Miller's allegation that Royal Caribbean was negligent by "permitting their minor guest [Martin Grose, Jr.] to operate a jet ski in violation of their own regulation and policy...." Complaint, ¶¶ 14, 15.

5. Without conducting a comprehensive analysis, and without specifically so holding, it also appears likely that, had this case proceeded, any liability of Royal Caribbean would have been limited to the stipulated value of the WaveRunner ($4,576.50), *see* Order for Ad Interim Stipulation (D.E.# 10), pursuant to the Limitation of Vessel Owner's Liability Act, 46 U.S.C. §§ 181—188. *See In re the Complaint of Royal Caribbean Cruises, Ltd.*, 55 F.Supp.2d 1367 (S.D.Fla.1999).

ment [DE# 47] is GRANTED as to both Scott Miller and Jerry Miller.