LaROSE, Judge.
Leydiana Santiago and Armando Ocasio, the parents and natural guardians of the child, Z.O.S., sued Dr. Marisa Baker and Women’s Care Florida, LLC, d/b/a Lifetime Obstetrics and Gynecology (collectively, Lifetime), for medical malpractice. Tragically, Z.O.S. suffers from severe birth defects allegedly caused by a drug that Ms. Santiago resumed taking to treat a chronic disease. According to the complaint, upon becoming a new patient at Lifetime, Ms. Santiago informed the medical staff that she and her husband were planning to have a second child. Later, an over-the-counter pregnancy test taken by Ms. Santiago yielded a positive result. On two visits several days later, however, Lifetime advised her that the pregnancy was nonviable; Lifetime recommended a dilation and curettage, which Ms. Santiago declined. Thereafter, Ms. Santiago resumed taking the drug, allegedly believing that spontaneous passage of the fetus would occur. She also alleged that she was unaware of the possible adverse effects the drug might have on a fetus. As noted above, Z.O.S. was born.
When she became a Lifetime patient, Ms. Santiago signed an arbitration agreement which scope covers the claims asserted in the complaint. She executed the agreement prior to Z.O.S.’s birth, indeed, prior to the child’s conception.[1] After the complaint was filed, Lifetime successfully moved to compel arbitration. Ms. Santiago and Mr. Ocasio challenge the trial court’s nonfinal order. We have jurisdiction, see Fla. R. App. P. 9.130(a)(3)(C)(iv), and affirm.
Ms. Santiago and Mr. Ocasio argue that the arbitration agreement violates the State’s public policy reflected in the medical malpractice statutes (the Act). See chapter 766, Fla. Stat. (2011). More specifically, they claim that the Act requires the resolution of malpractice claims exclusively through statutory voluntary binding arbitration or by trial. Lifetime contends that the Act sweeps less broadly. We agree.
Ms. Santiago and Mr. Ocasio never requested voluntary statutory arbitration, thus they never invoked the protections of section 766.207, which provides, in part, as follows:
(2) Upon the completion of presuit investigation with preliminary reasonable grounds for a medical negligence claim *571 intact, the parties may elect to have damages determined by an arbitration panel. Such election may be initiated by either party by serving a request for voluntary binding arbitration of damages within 90 days after service of the claimant’s notice of intent to initiate litigation upon the defendant....
[[Image here]]
(7)(f) The defendant shall pay the claimant’s reasonable attorney’s fees and costs, as determined by the arbitration panel, but in no event more than 15 percent of the award, reduced to present value.
(g) The defendant shall pay all the costs of the arbitration proceeding and the fees of all the arbitrators other than the administrative law judge.
(h) Each defendant who submits to arbitration under this section shall be jointly and severally liable for all damages assessed pursuant to this section.
Ms. Santiago willingly signed the arbitration agreement. Our record reflects no coercion or duress. We find nothing in the record suggesting that the agreement is procedurally or substantively unconscionable. The agreement clearly specifies that the parties waive the right to a jury trial and consent to arbitrate all claims arising out of or related to medical care and treatment. Unlike the provisions of section 766.207, the agreement provides that the parties shall share the arbitration expenses equally.
Ms. Santiago and Mr. Ocasio insist that Franks v. Bowers, 116 So.3d 1240 (Fla. 2013), compels reversal. They read Bowers broadly to hold that if neither party seeks arbitration under section 766.207, the malpractice claim cannot be arbitrated at all. They contend that the arbitration agreement lessens their rights under the Act and is inconsistent with the Act’s purpose and public policy.
Bowers disapproved an arbitration provision that failed to follow the Act’s requirements. The supreme court held that any agreement that seeks to enjoy the benefits of the arbitration provision under the statutory scheme must necessarily adopt all of its provisions. Id. at 1248. Here, the parties never invoked the statutory arbitration scheme.
Critically, Bowers did not hold that all private arbitration agreements are void as against public policy. Indeed, the supreme court noted that the Act
does not preclude all arbitration — and, in fact, encourages arbitration under the specified guidelines — and that our decision here is fact-specific pertaining only to the particular agreement before us and does not prohibit all arbitration agreements under [the Act.]
Id. at 1249-50. Indeed, nothing in Bowers “impede[s] the general enforceability of agreements to arbitrate.” Id. at 1251.
Moreover, nothing in the Act specifically prohibits parties from arbitrating their claims by private agreement outside the statutory scheme.
On the record before us, we do not find the agreement void as against public policy. We must also reject Ms. Santiago’s and Mr. Ocasio’s argument that Bowers categorically precludes private binding arbitration agreements under the Act.
Affirmed.
NORTHCUTT, J„ Concurs.
ALTENBERND, J., Concurs with opinion.

. Ms. Santiago and Mr. Ocasio do not raise the issue of the extent to which a parent or legal guardian can bind a minor — in this case an unconceived child at the time of the agreement — to arbitration. See Global Travel Mktg., Inc. v. Shea, 908 So.2d 392, 405 (Fla. 2005) (holding that an arbitration agreement incorporated into a commercial travel contract is enforceable against the minor or minor's estate in a tort action arising from the contract). We also note that they raise no constitutional challenge to the arbitration agreement. Nor does Mr. Ocasio challenge on appeal the extent to which he may be bound by the arbitration agreement.