CANADY, J.,
dissenting.
Because I adhere to my dissenting view in Franks v. Bowers, 116 So.3d 1240 (Fla. 2013), I would quash the decision on review and approve the result reached by *29 the Second District in Santiago v. Baker, 135 So.3d 569 (Fla. 2d DCA 2014), on the conflict issue.
As I explained in Bowers:
Nothing in the [Medical Malpractice Act] can be read to support the conclusion that the purpose of the statute is thwarted by voluntary pre-dispute agreements ... designed to limit the cost of litigation and the amount of paid claims. Instead, such voluntary agreements are designed to cure the same mischief that the statute seeks to address.
Bowers, 116 So.3d at 1255 (Canady, J., dissenting). It is no less true now than when Bowers was decided that “the public policy” animating the Court’s decision “is an unprecedented judicial policy that contravenes” not only “the declared objective of the Legislature set forth in section 766.201” but also “the public policy embodied in the Florida Arbitration Code.” Id. at 1256.
Bowers involved “an astonishing irony” because it employed a “line of judicial reasoning that condemns as invalid a voluntary agreement designed to limit the expense of medical malpractice litigation and grounds that condemnation on the purpose of a statute expressly designed to limit the expense of medical malpractice litigation.” Id. Here, the irony is joined with blatant self-contradiction. The foundation of the legislative public policy articulated in Bowers—the case on which the majority (incorrectly) hangs its hat—was the existence of a medical malpractice crisis. See id. at 1247 (majority opinion) (“[W]e have clarified the stated policy and intent of the Act—to address the ‘overpowering public necessity’ created by the medical malpractice insurance crisis.”). But since Bowers was decided, that policy has been (incorrectly) rejected by a majority of the Court. See Estate of McCall v. United States, 134 So.3d 894, 914 (Fla. 2014) (plurality opinion) (stating that “even if there had been a medical malpractice crisis in Florida at the turn of the century, the current data reflects that it has subsided”); id. at 921 (Pariente, J., concurring in result) (stating that “[t]here is no evidence of a continuing medical malpractice crisis”). In condemning the arbitration agreement based on the reasoning of Bowers, the majority relies on a crisis that the majority has said is nonexistent.
POLSTON, J., concurs.