870 So.2d 20 (2003)
Mark R. SHEA, as Personal Representative of the Estate of Mark Garrity Shea, deceased minor, Appellant,
v.
GLOBAL TRAVEL MARKETING, INC., d/b/a The Africa Adventure Company and d/b/a International Adventures, Ltd., Appellee.
No. 4D02-910.
District Court of Appeal of Florida, Fourth District.
August 27, 2003.
*21 Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., and Edward M. Ricci and Scott C. Murray of Ricci, Hubbard, Leopold, Frankel & Farmer, P.A., West Palm Beach, for appellant.
Edward S. Polk of Conroy, Simberg, Ganon, Krevans & Abel, P.A., Hollywood, for appellee.
Paul D. Jess, General Counsel, Tallahassee, and Steven M. Goldsmith, Boca Raton, *22 for Amicus CuriaeThe Academy of Florida Trial Lawyers.
Michelle Hankey, William Booth, Maxine Williams, and Barbara C. Burch of Legal Aid Society of Palm Beach County, Inc. as amicus curiae.

ON MOTION FOR CERTIFICATION
STONE, J.
We grant Appellee's motion for certification. We withdraw the opinion issued April 23, 2003, and substitute the following opinion:
Mark R. Shea ("father"), as personal representative for the estate of his deceased son, Mark Shea, appeals an order determining that Global Travel Marketing, Inc., a Florida corporation d/b/a The Africa Adventure Company ("Africa Adventure"), was entitled to arbitration. We reverse.
The material facts are not in dispute. The child, age eleven, was killed while on safari with his mother in Botswana. He was sleeping alone in a tent at a campsite when he was dragged from his tent and mauled by hyenas.
Africa Adventure operated the safari. Prior to the trip, the mother signed a contract releasing Africa Adventure from all liability arising from the safari. The contract included a provision mandating that all disputes between the parties be settled by binding arbitration in Fort Lauderdale, Florida. The contract also stated:
I have been informed and am aware that ADVENTURE TRAVEL CAN BE DANGEROUS and includes certain risks and dangers, including but not limited to ... dangers of wild animals....
I HEREBY RELEASE, WAIVE, INDEMNIFY, and AGREE NOT TO SUE THE AFRICA ADVENTURE COMPANY... for any and all losses, damages, or injuries or any claim or demand on account of injury or emotional trauma... or on account of death resulting from any cause ... while the undersigned is participating in a tour or any travel or other arrangements by THE AFRICA ADVENTURE COMPANY....

* * *
Any controversy or claim arising out of or relating to this Agreement, or the making, performance or interpretation thereof, shall be settled by binding arbitration in Fort Lauderdale, FL, in accordance with the rules of the American Arbitration association ...
The mother not only agreed to arbitrate her own future claims, but also signed the agreement on behalf of her son. She signed her name beneath the following statement:
I, as parent or legal guardian of the below named minor, hereby give my permission for this child or legal ward to participate in the trip and further agree, individually and on behalf of my child or ward, to the terms of the above.
The complaint alleged that Africa Adventure had a duty to use reasonable care in the operation of the safari and that its failure to do so resulted in the child's death. Requesting a jury trial, the father alleged that he was entitled to recover under Florida's Wrongful Death Statute, as representative of his son's estate. The parents are divorced.[1]
*23 Africa Adventure moved to stay the father's cause of action and compel arbitration. The trial court found that both the child and father were bound by the arbitration provision. The court declined to make any determination as to whether the release itself was valid and enforceable, finding the arbitration clause severable from the release.
The issue of whether a parent can bind a child to an agreement to arbitrate is one of first impression in Florida. We conclude that a parent, under these circumstances, does not have the authority to bind a minor child to arbitrate potential personal injury claims.
In determining whether the parties have entered into a binding agreement to arbitrate, we apply Florida law. Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F.2d 42, 45 (2d Cir.N.Y.1993)(question of whether parties have entered into an agreement to arbitrate is governed by state contract law principles). Florida courts apply ordinary principles of contract law to determine who is bound by an arbitration clause. Martha A. Gottfried, Inc. v. Paulette Koch Real Estate, 778 So.2d 1089, 1090 (Fla. 4th DCA 2001); Employers Ins. of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir.2001). We do not address Africa Adventure's assertion in its brief that the law of either Maryland or Botswana controls, as this claim was not argued before the trial court.
We recognize that "doubts as to the scope of an agreement to arbitrate are to be resolved in favor of arbitration." Info. Tech. & Eng'g Corp. v. Reno, 813 So.2d 1053 (Fla. 4th DCA 2002). However, the issue, here, is not one of scope, but of formationwho may be bound by an agreement to arbitrate.
Other courts, in considering whether an arbitration clause signed by a parent is binding on the child, have looked to the state law on other parental waivers for guidance. In Cross v. Carnes, 132 Ohio App.3d 157, 724 N.E.2d 828 (1998), a case on which Africa Adventure and the trial court relied, an Ohio appellate court found that a minor was bound to arbitrate because of a consent form her mother signed for her to appear on the Sally Jessy Raphael television show. The court looked to an Ohio Supreme Court decision holding that a parent has the authority to bind his or her minor child to an agreement releasing volunteers and sponsors of non-profit sport activities from liability for the child's future injuries. Id. at 836 (citing Zivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367, 696 N.E.2d 201 (1998)); see also Troshak v. Terminix Int'l Co., 1998 WL 401693 (E.D.Pa.1998)(holding that parent could not bind minor child to arbitration provision by looking to Pennsylvania law which already precluded parent from binding his or her child to a release or waiver of potential tort claims).
Ultimately, the question of whether parents can contract on behalf of their children is determined on public policy grounds. See, e.g., Harris v. Gonzalez, 789 So.2d 405, 409 (Fla. 4th DCA 2001).
In Colorado, public policy protects minors from being bound to exculpatory agreements signed by their parents. See Cooper v. Aspen Skiing Co., 48 P.3d 1229, 1231 (Colo.2002). In Cooper, a minor child was injured when he lost control and crashed into a tree while training at a skiing club. When the minor attempted to sue the club, the lower courts found that the release signed by his mother before the injury barred his claims. The Supreme Court of Colorado reversed and held that the public policy of Colorado afforded minors significant protections *24 that precluded a parent from releasing a minor's own prospective claim for negligence. It also held that an indemnity provision that shifted the source of compensation for negligence from the tortfeasor to the minor's parent created an unacceptable conflict of interest between a parent and a minor in violation of public policy favoring the protection of minors. Id.; see also Scott v. Pac. W. Mountain Resort, 119 Wash.2d 484, 834 P.2d 6, 11-12 (1992); Hawkins v. Peart, 37 P.3d 1062, 1066 (Utah 2001). In Cooper, the court discussed, and rejected, the argument that the court should distinguish policy designed to protect a child from parental mismanagement because of the financial pressure from parents who release future claims who do not have the same financial motivation to sign a release. The Colorado court did not find these distinctions meaningful or persuasive:
It may be true that parents in the pre-injury setting have less financial motivation to sign a release than a parent in the post-injury setting who needs money to care for an injured child. Nonetheless, the protections accorded minors in the post-injury setting illustrate Colorado's overarching policy to protect minors, regardless of parental motivations, against actions by parents that effectively foreclose a minor's rights of recovery.
Id. at 1234.
Florida's public policy favoring protection of minors in analogous circumstances is evidenced by both case law and statutory provisions. In this state, statutory law prohibits a minor child's natural guardian from binding her to a settlement in excess of $15,000 without the court's prior approval. §§ 744.387(2) and 744.301(1), Fla. Stat. (2001). Additionally, parents may not waive their child's right to file a compulsory counterclaim without court approval, Romish v. Albo, 291 So.2d 24 (Fla. 3d DCA 1974)(receded from on other grounds), and cannot assert or waive their child's privilege in the confidentiality of her communications with her psychotherapist, especially where the parents are involved in litigation themselves over the best interests of the child. Attorney ad Litem for D.K. v. Parents of D.K., 780 So.2d 301 (Fla. 4th DCA 2001). In cases involving child support or custody, it is clear that a parent has no authority to make private agreements without court approval. See Gammon v. Cobb, 335 So.2d 261 (Fla.1976). Further, this court recognized, in Dilallo v. Riding Safely, Inc., 687 So.2d 353 (Fla. 4th DCA 1997), that a minor is not bound by his or her own pre-injury contractual waiver.
Florida does, however, recognize that parents have authority to contract for their children when it comes to medical care. Variety Children's Hosp., Inc. v. Vigliotti, 385 So.2d 1052 (Fla. 3d DCA 1980). Patently, there is a common sense basis for such medical service or medical insurance exception.
The California Supreme Court recognized the need for this exception in Doyle v. Giuliucci, 62 Cal.2d 606, 43 Cal.Rptr. 697, 401 P.2d 1 (1965). There, the court held that a parent had the power to bind his child to arbitration by entering into a medical insurance contract of which the child is a third party beneficiary:
The crucial question ... is whether the power to enter into a contract for medical care that binds the child to arbitrate any dispute arising thereunder is implicit in a parent's right and duty to provide for the care of his child. There are compelling reasons for recognizing that power. Since minors can usually disaffirm their own contracts to pay for medical services, it is unlikely that medical groups would contract directly with *25 them. They can be assured the benefits of group medical service only if parents can contract on their behalf. Unless such contracts unreasonably restrict minors' rights, they should be sustained. The arbitration provision in such contracts is a reasonable restriction, for it does no more than specify a forum for the settlement of disputes.
Id., 43 Cal.Rptr. 697, 401 P.2d at 3 (citations omitted).
As the crucial question in Doyle involved a parent's right to contract on behalf of a child for medical care evoking different considerations than those at issue, here, we conclude that the trial court erroneously relied on Doyle.
We also distinguish the instant case from Zivich, where the Ohio Supreme Court held that parents could sign an exculpatory agreement to allow their child to play soccer. 696 N.E.2d at 205. The court discussed the public policy interests that led to its conclusion:
It cannot be disputed that volunteers in community recreational activities serve an important function. Organized recreational activities offer children the opportunity to learn valuable life skills. It is here that many children learn how to work as a team and how to operate within an organizational structure. Children also are given the chance to exercise and develop coordination skills. Due in great part to the assistance of volunteers, nonprofit organizations are able to offer these activities at minimal cost.... Clearly, without the work of its volunteers, these nonprofit organizations could not exist, and scores of children would be without the benefit and enjoyment of organized sports. Yet the threat of liability strongly deters many individuals from volunteering for nonprofit organizations.
Id.
We concur in the wisdom of this reasoning and, as a matter of public policy, recognize that non-profit entities, their employees and volunteers, do not fall within the ambit of this opinion. Clearly, such public policy concerns are not present in the instant case.
Here, we can discern no common sense reason to depart from the public policy favoring the protection of children from waiver of their basic rights by a parent. Cf.; Meyer v. Naperville Manner, Inc., 262 Ill.App.3d 141, 199 Ill.Dec. 572, 634 N.E.2d 411 (2d Dist.1994)(rendering ineffective a release signed by parent before minor child's cause of action accrued because waiver was not authorized by any statute or judicial approval); McKinstry v. Valley Obstetrics-Gynecology Clinic, P.C., 428 Mich. 167, 405 N.W.2d 88 (1987)(common-law rule that a parent has no authority to waive, release, or compromise claims by or against a child can be abrogated by statute).
Although we recognize that it is impractical for a parent to obtain a court order before entering into pre-injury contracts, we cannot accept the notion that parents may, carte blanche, waive the litigation rights of their children in the absence of circumstances supported by public policy. Circumstances in which a waiver would be supported by a recognized public policy include waivers in cases of obtaining medical care or insurance or for participation in commonplace child oriented community or school supported activities. We need not decide, here, what additional circumstances might support such a waiver; it is sufficient to state that commercial travel opportunities are not in that category.
*26 As the child was not bound by the arbitration agreement, the father's survivor claim is also not subject to arbitration because he was not a signatory to the contract.
We, therefore, reverse the arbitration order and remand for further proceedings in the trial court.
We certify the following question to the supreme court as one of great public importance:
WHETHER A PARENT'S AGREEMENT IN A COMMERCIAL TRAVEL CONTRACT TO BINDING ARBITRATION ON BEHALF OF A MINOR CHILD WITH RESPECT TO PROSPECTIVE TORT CLAIMS ARISING IN THE COURSE OF SUCH TRAVEL IS ENFORCEABLE AS TO THE MINOR.
NOTES
[1] The mother sued on her own behalf. See Jacobs v. Global Travel Mktg., Inc., 796 So.2d 1183 (Fla. 4th DCA 2001). This court affirmed the trial court's finding that the mother was bound by her agreement to arbitrate.