972 So.2d 887 (2007)
Rachel KRATHEN, Appellant,
v.
The SCHOOL BOARD OF MONROE COUNTY, Florida, Appellee.
No. 3D07-815.
District Court of Appeal of Florida, Third District.
October 3, 2007.
Rehearing Denied January 30, 2008.
*888 Charles M. Milligan, Key West, for appellant.
Vernis & Bowling and Michael A. Meadows and Curtis Mollohan, Islamorada, for appellee.
Before WELLS and CORTIÑAS, JJ., and FLETCHER, Senior Judge.
CORTIÑAS, Judge.
This is an appeal from an order granting final summary judgment in favor of the School Board of Monroe County ("the School Board") on Rachel Krathen's claim that the School Board's negligence led to injuries she sustained during a cheerleading practice in the gymnasium of Key West High School where Krathen was a student. Specifically, Krathen alleged that the School Board was negligent in:
failing to adequately supervise the cheerleading practice at the Glenn Archer Gymnasium[;] conducting the practice without adequate preparation, knowing or having reason to know of the potential for injury to participants; using inexperienced or untrained personnel to supervise the cheerleading practice[;] failing to place protective mats on the floor so as to cushion impact[;] conducting the practice without the coach being present[;] failing to abide by or follow appropriate School Board policies and/or procedures relating to extracurricular activities[;] being generally careless and negligent.
The School Board, by way of affirmative defense, contended that a Consent and Release from Liability Certificate ("Release") signed by Krathen and her parent/guardian, Mary C. Hornberger, barred Krathen's claim. Based on this affirmative defense, the School Board moved for summary judgment, which the trial court granted. We review an order granting summary judgment de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000).
Here, we conclude that the Release clearly and unambiguously indicates the intent to release the School Board from liability for, as the Release states, "any injury or claim resulting from . . . athletic participation." Under Florida law, this language is sufficient to insulate the School Board from liability for negligence claims. "It is settled law that a pre-incident release is not effective to preclude an action based on the, releasee's subsequent negligence unless the instrument clearly and specifically provides for a limitation or elimination of liability for such acts." Witt v. Dolphin Research Ctr., Inc., 582 So.2d 27, 28 (Fla. 3d DCA 1991). We find that any claim resulting from athletic participation includes the claim for negligence such as was alleged here.[1] Plaintiffs counsel presented no evidence supporting a claim for gross negligence or an intentional tort.
Because we find that the Release covers the negligence claim alleged here, we must determine whether a parent can bind their child, to a waiver of liability. Although we recognize this very question was recently certified to the Florida Supreme Court by our sister court, see Fields v. Kirtan, 961 So.2d 1127 (Fla. 4th DCA 2007), we find our previous decision in Gonzalez v. City of Coral Gables, 871 So.2d 1067 (Fla. 3d DCA 2004), to be controlling. In Gonzalez, we held that a hold harmless agreement, signed by a parent so that her child could participate in a program whereby students received school *889 credit for training as fire rescue personnel, waived liability in the event of a negligence claim. Id. at 1067. In so holding, we concluded that the program, known as the Coral Gables Fire Rescue Explorer Program, "falls within the category of commonplace child oriented community or school supported activities for which a parent or guardian may waive his or her child's litigation rights in authorizing the child's participation." Id.
This conclusion was based on the Fourth District's holding in Shea v. Global Travel Marketing, Inc., 870 So.2d 20 (Fla. 4th DCA 2003), wherein a mother signed an arbitration provision on behalf of herself and her minor child to enable them to travel on an African safari. Id. at 22. Ultimately, the child died on the safari and his father sought to invalidate the arbitration provision so that he could bring a claim against the safari company for wrongful death. Id. In invalidating the arbitration provision, the Fourth District drew a distinction between areas in which parents can waive their children's litigation rights; and areas where parents cannot waive their children's litigation rights. Id. at 25-26. This distinction was based on policy concerns, with the Fourth District recognizing that a waiver of litigation rights is sometimes necessary to afford children the opportunity to undertake activities beneficial for their health or well-being. Id. at 24. For example, parents may waive their children's rights in order to obtain medical care or insurance. Id. at 24-25. Additionally, a waiver may also be necessary for schools and other non-profit entities to recruit employees and volunteers to provide "commonplace child oriented community or school supported activities" which are beneficial for children. Id. at 25; see also Zivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367, 696 N.E.2d 201, 205-06 (1998). The Fourth District then found that there was no public policy reason to support upholding an agreement to arbitrate signed by a parent on behalf of a minor child so that the child could accompany the parent on an African safari. Shea, 870 So.2d at 25. Without deciding "what additional circumstances might support such a waiver," the Fourth District concluded in a blanket holding that "commercial travel opportunities are not in that category." Id.
The Florida Supreme Court ultimately rejected this conclusion and held that the arbitration provision signed by the mother on, behalf of her child was binding. Global Travel Mktg., Inc. v. Shea, 908 So.2d 392 (Fla.2005). In so doing, the Florida Supreme Court rejected the distinction the Fourth District drew between commercial and not-for-profit activities, implying that the distinction was too narrow. Id. at 404. Instead, the Florida Supreme Court held that parents have the authority to make the decision whether to waive a child's litigation rights in exchange for participation in an activity the parent feels is beneficial for the child. Id. Moreover, parents are free to make this decision without interference from the State, as parents are presumed to act in the best interests of their children. Id. Thus, "whether [it] be. academically or socially focused pursuits, physically rigorous activities such as football, adventure sports such as skiing, horseback riding, or mountain climbing, or . . . an adventure vacation in a game reserve" as was the case in Shea, "[p]arents who choose to allow their children to engage in these activities may also legitimately elect on their children's behalf to agree in advance to arbitrate a resulting tort claim if the risks of these activities are realized." Id.
Here, Krathen's parent/guardian clearly thought participation in cheerleading was beneficial for Krathen and thus was willing to "release and hold harmless" the School Board from "any claim or injury" Krathen *890 suffered as a result of her participation in cheerleading. Because it is within a parent's authority to make this decision on behalf of his or her child, Krathen and her parent/guardian are bound by the Release.
For the foregoing reasons, and because the remaining issues on appeal are without merit, we affirm the trial court's entry of final summary judgment in favor of the School Board.
Affirmed.
NOTES
[1] Because we are relying on the portion of the Release signed by Krathen's parent/guardian, we find it unnecessary to address our decision in Zalkin v. American Learning Systems, Inc., 639 So.2d 1020 (Fla. 3d DCA 1994), which relied on a minor student's express assumption of risk.