DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ETHAN ELALOUF**,
Appellant,

v.

**SCHOOL BOARD OF BROWARD COUNTY**,
a political subdivision of the State of Florida,
Appellee.

No. 4D19-3272

[January 6, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael A. Robinson, Judge; L.T. Case No. CACE17-022265 (13).

Donna Greenspan Solomon of Solomon Appeals, Mediation & Arbitration, Fort Lauderdale, for appellant.

Michael T. Burke of Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A., Fort Lauderdale, for appellee.

Leonard E. Ireland Jr. of Clayton-Johnston, P.A., Gainesville, for Amicus Curiae FHSAA.

LEVINE, C.J.

Appellant, a high school athlete, appeals a final judgment in favor of the School Board of Broward County ("school board") finding that an executed pre-game release barred his claim of negligence against the school board. Appellant now contends that the release is ambiguous and unenforceable and that, for public policy reasons, it should be treated no differently than a pre-injury release for commercial establishments. We affirm and find that appellant did not preserve below the claims he now argues. Further, even if appellant had preserved his claims, his arguments are without merit.

Appellant played on his high school varsity soccer team. During a varsity soccer game, another player hit appellant while he attempted a shot

on goal.  The force of the hit threw appellant into an unpadded cement barrier near the soccer field.

Prior to playing in the varsity soccer game, appellant and his father voluntarily signed a "Consent and Release from Liability Certificate" allowing appellant to play soccer for his high school.  In the student acknowledgment section of the release, appellant agreed to "release and hold harmless [the school board] of any and all responsibility and liability for any injury or claim resulting from such athletic participation. . . ."  The parental consent section of the release contained the same language.  The release also included a section in large bold font stating the following:

> EVEN IF . . . THE SCHOOL DISTRICT . . . USES REASONABLE CARE IN PROVIDING THIS ACTIVITY, THERE IS A CHANCE YOUR CHILD MAY BE SERIOUSLY INJURED . . . BY PARTICIPATING IN THIS ACTIVITY BECAUSE THERE ARE CERTAIN DANGERS INHERENT IN THE ACTIVITY WHICH CANNOT BE AVOIDED OR ELIMINATED.  BY SIGNING THIS FORM YOU ARE GIVING UP YOUR CHILD'S RIGHT AND YOUR RIGHT TO RECOVER FROM . . . THE SCHOOL DISTRICT . . . IN A LAWSUIT FOR ANY PERSONAL INJURY . . . THAT RESULTS FROM THE RISKS THAT ARE A NATURAL PART OF THE ACTIVITY. . . .

Appellant sued for negligence, claiming the school board should have covered the cement barrier and not had the barrier close to the field.  The school board moved for summary judgment, arguing the release barred appellant's action under *Krathen v. School Board of Monroe County*, 972 So. 2d 887 (Fla. 3d DCA 2007).  In his response to the school board's motion for summary judgment, appellant argued only that the release neither mentioned the word "negligence" nor released the school board from its own negligence.  Appellant elaborated that leaving a cement barrier uncovered near the soccer field was a risk that could not be considered a natural part of the activity.  The trial court granted summary judgment relying on *Krathen* and entered final judgment for the school board.  This appeal follows.

Orders entering summary judgment are reviewed de novo.  *Kokhan v. Auto Club Ins. Co. of Fla.*, 297 So. 3d 570, 575 (Fla. 4th DCA 2020).  The enforceability of a pre-injury release arising from undisputed facts is reviewed de novo.  *Brooks v. Paul*, 219 So. 3d 886, 887 (Fla. 4th DCA 2017).

"An exculpatory clause purports to deny an injured party the right to recover damages from the person negligently causing his injury."  *Id.*

2

(citation omitted). "Such provisions are deemed to be unambiguous and enforceable when the language unequivocally demonstrates a clear and understandable intention for the defendant to be relieved from liability such that an ordinary and knowledgeable person will know what he or she is contracting away." *Pillay v. Pub. Storage, Inc.,* 284 So. 3d 566, 569 (Fla. 4th DCA 2019).

Initially, the school board argues appellant did not preserve his claims for appeal. "A litigant seeking to overturn a lower court's judgment may not rely on one line of argument in the trial court and then pursue a different line of argument in the appellate courts." *Sanchez v. Miami-Dade Cty.,* 286 So. 3d 191, 195 (Fla. 2019). Absent fundamental error, arguments must be preserved. *Id.*

Here, appellant did not preserve his claims for appeal. First, appellant did not argue below any public policy reasons for not treating the release differently than a pre-injury release for a commercial business. Second, and more importantly, appellant did not argue below that the language in the release was ambiguous or caused him confusion. Rather, appellant merely argued that the release did not include the word "negligence" and thus nothing in the release operated to excuse the school board's own negligence. The entire tenor of appellant's response in opposition to the school board's motion for summary judgment centered on the absence of the word "negligence."[1]

We find no fundamental error because the trial court did not commit error that went to the heart of the judicial process. *See Fleischer v. Fleischer*, 586 So. 2d 1253, 1254 (Fla. 4th DCA 1991). In this case, appellant pursued one line of argument below, and then pursued a different line of argument on appeal. *Sanchez*, 286 So. 3d at 195.

---

[1] The dissent relies on language in the response wherein appellant stated that "the release was neither clear and unequivocal nor was there any mention of the School Board, their agents and/or employee's own negligence or that their agents and/or employees' negligence being excluded." Although the quote uses the phrase "clear and unequivocal," the clear and unequivocal language was referring to the absence of any mention of negligence. In other words, appellant argued that the release was not clear and unequivocal because of the omission of the word negligence. Indeed, the sentence immediately preceding the language quoted by the dissent stated that "'the intent to relieve a party from responsibility for its own negligence must be clearly expressed in a release . . .' and 'appellee's negligence must be specifically mentioned.'"

3

Further, even if appellant had preserved his claims for appeal, the release is unambiguous and enforceable. On this point, *Krathen* is instructive. In *Krathen,* a high school cheerleader sustained injuries during a practice at her school's gymnasium. 972 So. 2d at 888. The cheerleader alleged the school board was negligent in failing to place protective mats on the floor during practice. *Id.* Prior to the incident, the cheerleader signed a "Consent and Release from Liability Certificate," releasing the school board from liability for "any injury or claim resulting from . . . athletic participation." *Id.* The Third District determined the language in the release "clearly and unambiguously" released the school board from liability for negligence claims. *Id.*

In this case, the release signed by appellant was a "Consent and Release from Liability Certificate" that released the school board from liability for "any injury or claim resulting from . . . athletic participation." Like in *Krathen,* this language "clearly and unambiguously" released the school board from liability for negligence claims. Because appellant suffered injuries resulting from athletic participation, the school board would be held harmless from liability. Accordingly, the trial court did not err in granting summary judgment in favor of the school board.[2]

Appellant cites to cases finding an exculpatory clause ambiguous when qualifying provisions in the release created confusion as to what claims were being released. *Brooks,* 219 So. 3d at 887 (invalidating an exculpatory clause when disclaimer was qualified by a statement that the surgeon would "do the very best to take care of [the patient] according to community medical standards"); *Murphy v. Young Men's Christian Ass'n of Lake Wales, Inc.,* 974 So. 2d 565, 566-68 (Fla. 2d DCA 2008) (finding ambiguity when the exculpatory clause excluded "any claims based on negligence" but also provided that YMCA would take "every reasonable precaution" and concluding that a reasonable reader might be led to believe that the waiver of liability extended only to claims for injuries that were unavoidable).

---

[2] The school board argued below that the release signed by appellant was the exact same release in *Krathen.* Although *Krathen* does not replicate the entire release in that case, the essence of both releases holds the school board harmless for any injury or claim resulting from athletic participation. The dissent argues that the release in this case contains additional language that the release in *Krathen* did not, but the record on appeal does not contain the release in *Krathen.* Where a document is not part of the record, it will not be considered by the appellate court. *See Hughes v. Enter. Leasing Co.,* 831 So. 2d 1240, 1241 (Fla. 1st DCA 2002).

4

*Brooks* and *Murphy* determined the qualifying language created confusion because the entity seeking to be released from liability agreed to exercise reasonable care in providing the activity despite the release's broad disclaimer of liability. Unlike *Brooks* and *Murphy*, the qualifying statements here clearly warn that serious injuries can occur even if reasonable precautions are taken.

In *Merlien v. JM Family Enterprises, Inc.*, 301 So. 3d 1 (Fla. 4th DCA 2020), this court found clear and unambiguous a disclaimer that specifically released all rights to make a claim and that did not suggest the company would take responsibility for the releasor's safety. Like the release in *Merlien*, the disclaimer here releases the school board from liability for all claims arising from athletic participation. The wording of the release unequivocally demonstrates a clear and understandable intention for the school board to be relieved from liability.

The fact that the language releasing the school board from "any injury or claim resulting from . . . athletic participation" was a smaller font size than the portion of the release addressing inherent dangers does not somehow change its meaning or render the release unclear or ambiguous. "[O]ne who signs a contract is presumed to know its contents . . . ." *All Fla. Sur. Co. v. Coker*, 88 So. 2d 508, 511 (Fla. 1956). In interpreting a contract, a court must give effect to all its terms. *Belen Sch., Inc. v. Higgins*, 462 So. 2d 1151, 1153 (Fla. 4th DCA 1984). This is not a case where terms were "hidden in a maze of fine print." *Bellsouth Mobility LLC v. Christopher*, 819 So. 2d 171, 173 (Fla. 4th DCA 2002). The entire release encompassed less than a single page.

Appellant lastly now argues on appeal that the trial court erred in entering summary judgment when no policy reason was shown to treat the release any differently from a commercial pre-injury release, which is unenforceable when executed by a parent on behalf of a minor. In support, appellant relies on *Kirton v. Fields*, 997 So. 2d 349 (Fla. 2008). Even if this issue was preserved, *Kirton* is inapposite.

In *Kirton*, the court held that a "pre-injury release executed by a parent on behalf of a minor child is unenforceable . . . in a tort action arising from injuries resulting from participation in a commercial activity." *Id.* at 358. The court specifically did not extend this holding to a pre-injury release involving a non-commercial activity provider. *Id.* at 350 n.2. Accordingly, the public policy reasons in *Kirton* would not apply in the case of a non-commercial activity provider like the school board.

In summary, we affirm and find that appellant did not preserve his claims below. Even if appellant had preserved his claims, the release signed by appellant is unambiguous and enforceable.

*Affirmed.*

ARTAU, J., concurs.
WARNER, J., dissents with opinion.

WARNER, J., dissenting.

I dissent for two reasons. First, the trial court erred as a matter of law in relying on an assertion by appellee's counsel as fact in the summary judgment hearing that the release in this case was the same as the release in *Krathen v. School Board of Monroe County,* 972 So. 2d 887 (Fla. 3d DCA 2007).

Second, I conclude that the release did not clearly and specifically release the appellee for the negligence which occurred in this case. Unlike the majority, I find that this argument was preserved. Therefore, I would also reverse on the merits.

Appellant was injured while playing in a soccer match at Piper High School, part of the Broward County School District. During the game, appellant was tackled by a defensive player. The hit sent appellant sliding headfirst on the grass. He slid out of the field of play and hit a cement block just a few feet outside of the lines of the field, severely injuring his hand and wrist. The cement barrier was part of a high jump pit or shot put pit, situated very close to the soccer field lines. The block was not padded in any way.

Appellant and his father filed suit against the School Board alleging negligence in leaving an unpadded concrete block so close to the soccer field that it posed a danger to the players. The School Board moved for summary judgment based upon a release signed by the appellant and his father. In very small print, the release stated that the participant acknowledged the risks of athletic participation and accepted responsibility for his own welfare "with full understanding of the risks involved." His father signed that part of the release, in which he also agreed to release the school "of any and all responsibility and liability for any injury or claim resulting from such athletic participation, and agreed to take no legal action against the FHSAA because of any accident or

6

mishap involving the athletic participation of my child." The release then includes the following in large type, bolded and capitalized language:

> READ THIS FORM COMPLETELY AND CAREFULLY. YOU ARE AGREEING TO LET YOUR MINOR CHILD ENGAGE IN A POTENTIALLY DANGEROUS ACTIVITY. YOU ARE AGREEING THAT, EVEN IF MY CHILD'S/WARD'S SCHOOL, THE SCHOOLS AGAINST WHICH IT COMPETES, THE SCHOOL DISTRICT, THE CONTEST OFFICIALS AND FHSAA USES REASONABLE CARE IN PROVIDING THIS ACTIVITY, THERE IS A CHANCE YOUR CHILD MAY BE SERIOUSLY INJURED OR KILLED BY PARTICIPATING IN THIS ACTIVITY BECAUSE THERE ARE CERTAIN DANGERS INHERENT IN THE ACTIVITY WHICH CANNOT BE AVOIDED OR ELIMINATED. BY SIGNING THIS FORM YOU ARE GIVING UP YOUR CHILD'S RIGHT AND YOUR RIGHT TO RECOVER FROM MY CHILD'S/WARD'S SCHOOL, THE SCHOOLS AGAINST WHICH IT COMPETES, THE SCHOOL DISTRICT, THE CONTEST OFFICIALS AND FHSAA IN A LAWSUIT FOR ANY PERSONAL INJURY, INCLUDING DEATH, TO YOUR CHILD OR ANY PROPERTY DAMAGE THAT RESULTS FROM THE RISKS THAT ARE A NATURAL PART OF THE ACTIVITY.

Thus, the capitalized language in large type stresses that there are dangers inherent in the activity which cannot be avoided and are a natural part of the activity.

Appellant filed a response to the motion arguing that the release did not release the appellee from its own negligence unless the instrument clearly and specifically provides for a limitation of liability for negligence. He noted that the release specified that it applied to "risks that are a natural part of the activity," and he argued that leaving an unpadded cement pit close to the field of play was not a natural part of the activity of soccer. Most of his response centered around inapplicable and disapproved case law that held that a release must include "negligence" within its terms to be effective to release a party from its own negligence.[3] However, he did add:

---

[3] He cited to *Witt v. Dolphin Research Center, Inc.*, 582 So. 2d 27 (Fla. 3d DCA 1991). *Witt* cites to *Van Tuyn v. Zurich American Ins. Co.*, 447 So. 2d 318 (Fla. 4th DCA 1984), which is also cited in appellant's response. *Van Tuyn* in turn was disapproved of by the supreme court in *Sanislo v. Give Kids the World, Inc.*, 157 So. 3d 256 (Fla. 2015). In *Sanislo*, the court held that "the absence of the

In our case the release was neither clear and unequivocal nor was there any mention of the School Board, their agents and/or employee's own negligence or that their agents and/or employees' negligence being excluded. The writing in parts of the Release signed by [appellants] is so tiny, it is barely legible. Any ambiguities in a contract which releases a party from liability is strictly construed against the release.

At the summary judgment hearing, appellee relied solely on *Krathen,* contending that it was directly on point and involved the same release as in this case. The court questioned appellee's attorney on this point, and the attorney told the court that the release was the same FHSAA release. Appellant's attorney questioned that assertion, noting there was nothing in the opinion itself to show that it was the same. Stating that it was going on counsel's word that this was the same release, the court then granted the motion based upon *Krathen.*

As noted in the majority opinion, when considering "the enforceability of [a] pre-injury release [] arising from undisputed facts, the standard of review is de novo." *Brooks v. Paul,* 219 So. 3d 886, 887 (Fla. 4th DCA 2017) (citation omitted). While the facts of this incident and the contents of *this* release clause are undisputed, it was disputed at the hearing that the release in the *Krathen* case was identical to the release in this case.

"Trial judges cannot rely upon [counsel's] unsworn statements as the basis for making factual determinations[.] *Olson v. Olson,* 260 So. 3d 367, 369 (Fla. 4th DCA 2018) (quoting *Smith v. Smith,* 64 So. 3d 169, 171 (Fla. 4th DCA 2011)). An attorney's statements are not evidence. *Olson,* 260 So. 3d at 369. The amicus brief of the Florida High School Athletic Association (FHSAA) informs us that the additional bolded and capitalized language quoted in the majority opinion was not in the *Krathen* case. For such a significant disputed fact, the trial court should have denied the motion. Nevertheless, for the purpose of my dissent, I accept the FHSAA statement that the capitalized language above was not included in the *Krathen* release.

I would find that appellant did preserve the argument raised on appeal by arguing that the agreement was not clear and unequivocal. Appellant argued that it did not clearly and specifically release negligence, and he referred to that portion of the release which refers to risks that are a

terms 'negligence' or 'negligent acts' in an exculpatory clause does not render the agreement per se ineffective to bar a negligence action." *Id.* at 271.

natural part of the activity. He noted that the danger of a concrete barrier so close to the field of play is not a natural part of the activity or an inherent risk of participation in the sport. The brief likewise argues that the language of the release does not clearly include the release of negligence for risks not inherent in the sport. Because our review of summary judgments is de novo, I would hold that the argument made in appellant's response to the motion for summary judgment preserved this issue for appeal.

The majority opinion properly relies on the statement in *Brooks v. Paul*, 219 So. 3d 886 (Fla. 4th DCA 2017), as the rule of law to be applied to releases containing exculpatory clauses, as this one does. *Brooks* states:

> "An exculpatory clause purports to deny an injured party the right to recover damages from the person negligently causing his injury." *Kitchens of the Oceans, Inc. v. McGladrey & Pullen, LLP*, 832 So. 2d 270, 272 (Fla. 4th DCA 2002) (quoting *O'Connell v. Walt Disney World Co.*, 413 So. 2d 444, 446 (Fla. 5th DCA 1982)). "Exculpatory clauses are disfavored in the law because they relieve one party of the obligation to use due care and shift the risk of injury to the party who is probably least equipped to take the necessary precautions to avoid injury and bear the risk of loss." *Loewe v. Seagate Homes, Inc.*, 987 So. 2d 758, 760 (Fla. 5th DCA 2008). Further, such clauses "will be strictly construed against the party claiming to be relieved of liability." *Murphy v. Young Men's Christian Ass'n of Lake Wales, Inc.*, 974 So. 2d 565, 567–68 (Fla. 2d DCA 2008). " 'Such clauses are enforceable only where and to the extent that the intention to be relieved was made clear and unequivocal in the contract, and the wording must be so clear and understandable that an ordinary and knowledgeable party will know what he is contracting away.' " *Id.* at 568 (quoting *Southworth & McGill, P.A. v. S. Bell Tel. & Tel. Co.*, 580 So. 2d 628, 634 (Fla. 1st DCA 1991)).

*Brooks,* 219 So. 2d at 887–88.[4]  In *Brooks*, we considered an exculpatory release signed by a patient for her doctor's treatment. In it, the patient

---

[4] Appellant did not cite to *Brooks* in his memorandum to the trial court, although he did cite to *O'Connell v. Walt Disney World Co.*, 413 So. 2d 444 (Fla. 5th DCA 1982), which is cited in *Brooks*. There is nothing wrong with citing to older case law. Sometimes it provides the best support for a position. But it is always helpful to the court, both trial and appellate, when those cases are brought up to

agreed not to sue the doctor because "I realize that Dr. Michael D. Paul and his staff will do the very best to take care of me according to community medical standards." *Id.* at 887. This statement was in smaller type below a statutory notice. The inclusion of the foregoing sentence made the release ambiguous, because it could be interpreted as explaining that the doctor would not be liable for injuries which occurred without any fault on his part, not those in which he was at fault. *Id.*

*Brooks* cited to *Goyings v. Jack and Ruth Eckerd Foundation*, 403 So. 2d 1144 (Fla. 2d DCA 1981), disapproved on other grounds by *Sanislo v. Give Kids the World Inc.*, 157 So. 3d 256 (Fla. 2015). In *Goyings*, the court also found that a release did not clearly and unequivocally absolve the releasee from its own negligence. There the release clause provided:

> It is further agreed that reasonable precautions will be taken by Camp to assure the safety and good health of said boy/girl but that Camp is not to be held liable in the event of injury, illness or death of said boy/girl, and the undersigned, does fully release Camp, and all persons concerned therewith, for any such liability.

403 So. 2d at 1145–46. The precatory language that the camp would take reasonable care gave the exculpatory clause a different meaning.

> By their own choice of language, appellees agreed to take reasonable precautions to assure Leigh Anne's safety. This duty to undertake reasonable care expressed in the first part of the provision would be rendered meaningless if the exculpatory clause absolved appellees from liability. We cannot ignore this language because all terms of a contract provision must be read as a whole to give every statement meaning.

*Id.* at 1146. The court held that the language was not clear and unequivocal, nor explicit. *Id.* Therefore, it did not preclude the negligence claim against the appellee. *Id.*

*Brooks* and *Goyings* were distinguished by this court in *Merlien v. JM Family Enterprises, Inc.*, 301 So. 3d 1, 5 (Fla. 4th DCA 2020). In both cases, the *Merlien* court noted that "additional language" in the releases created the ambiguity. In *Brooks*, the disclaimer was "qualified" by the

---

date with citations to more current case law, particularly out of the appellate court in whose district the trial court presides.

additional language, rendering it ambiguous. *Id.* In *Goyings*, it was also qualified by language indicating that the camp would take reasonable precautions to assure the safety of campers. *Id.* In *Merlien*, the release contained no qualifications to the disclaimer. *Id.*

This case is more like *Brooks* and *Goyings*. The release states that the participant and his parents are agreeing not to sue for any mishap with full understanding of the risks involved in athletic competition. But that part is in tiny print. The large print states that the participant and parent acknowledge that even with reasonable care, the participant may still be injured by participating, because "there are certain dangers *inherent* in the activity which cannot be avoided or eliminated." It further states that the participant and parent are giving up their right to sue the appellee for injuries which result "from the risks that are *a natural part of the activity*." As pointed out both at trial and on appeal, the release is designed to alert the parties that there are many dangers inherent in athletic competition, and the athlete and his/her parents release the appellee from liability for injuries from activities inherent in the competition.

This qualifying language, which by its capitalization and size appears far more important than the small print language releasing liability, does not clearly absolve appellee from its own negligence, when that negligence is not a natural part of the activity and where the danger is not *inherent* in the sport. In this case, appellant was injured when he slammed into a concrete barrier only feet from the soccer field. This type of risk is not *inherent* in the sport, nor a natural part of the activity. Being hit by a defensive player is and sliding out of bounds might be inherent in the sport, but no one anticipates that the area outside the field of play will have dangerous traps.

Because of the additional language in this release, *Krathen* is inapposite. The release in *Krathen* released the school board from "any injury or claim resulting from . . . athletic participation." 972 So. 2d at 888. It did not include language that the parent was agreeing not to sue for injuries resulting from risks which were a natural part of the activity. Amicus FHSAA explains that this language was added to the form after the 2010 amendment to section 744.301(3)(b), Florida Statutes, which required this language in any release by a commercial enterprise. Thus, it is clear that it was not in the *Krathen* release, which was executed well prior to the amendment of the statute.

The additional language changes the instant release from the *Krathen* release to make it unclear, just as the extra sentences did in *Brooks* and *Goyings*. A reasonable person would not understand that he was giving

11

up his right to seek damages for injuries suffered by appellee's own negligence in placing dangerous obstructions outside the field of play without providing protection for the players.

I would reverse the summary final judgment and remand this case for further proceedings.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

12